### SARAH WOODBURY v. BENAIAH SHORT.

Where the course of a stream, running across the land of the defendant to the plaintiff's land, was changed by a sudden and unusual flood, so as to run upon the defendant's land without passing over the plaintiff's land, and the defendant permitted the water to run in the new channel, thus formed, for ten years, it was held that he was bound by his acquiescence, and that he had no right, after such lapse of time, to obstruct the stream upon his own land, so as to divert it from the new channel into the channel in which it had formerly passed across the plaintiff's land.

TRESPASS ON THE CASE for so diverting a stream of water from its natural and usual course, as to cause it to flow over and inundate the plaintiff's land. Plea, the general issue, and trial by jury.

On trial the plaintiff gave evidence tending to prove that the defendant, in 1840, obstructed the course of a stream of water, upon his land, so as to cause it to flow over the plaintiff's land, as alleged in her declaration; whereby she suffered injury.

The defendant gave evidence tending to prove, that ever before and until the year 1830 the said stream had flowed in a certain direction, and that in 1830, in a sudden and unusual flood, the said stream changed its course on the defendant's land; and that what he did, in 1840, was only to direct said stream back, into the channel in which it had run prior to 1830.

The plaintiff requested the court to charge the jury that the defendant had no legal right, under the circumstances, to direct the stream into its former channel, if the so doing would cause an injury to the plaintiff. But the court instructed the jury that the defendant had a legal right, in 1840, to direct the stream into the channel in which it had run prior to 1830.

Verdict for defendant. Exceptions by plaintiff.

*J. S. Marcy* and *O. P. Chandler* for plaintiff.

No principle is better settled, than that no one has a right to divert a stream from its "*natural course*," to the injury of another. The "natural course" of a stream is obviously that which it *takes of itself*, uninfluenced by any artificial means whatever. That a stream has, at some time, flowed in another channel and the length of time it has flowed in the channel, from which it is diverted, are circumstances not to be taken into consideration, in determining whether its course is "natural."

In the present case the defendant permitted the water to flow in the channel, from which he diverted it, for the period of ten years, without, as far as appears, even intimating any intention of turning it back to its former channel; and it was but reasonable that the plaintiff, and others, whose soil and property might be affected by the water, should, by an acquiesence of such duration, conclude that he had relinquished any right, or intention, he ever might have had of turning the water into its former channel, and consequently omit the use of any means to prevent damage from flooding their lands. *Tyler* v. *Wilkinson*, 4 Mason 400. *Arnold* v. *Root*, 12 Wend. 331. 2 Kent 428, [Ed. of 1840.] Angell on Water Courses 222.

*Tracy & Converse* and *A. P. Hunton* for defendant.

The defendant had a right to return the water to the old channel, as it was prior to 1830, until barred of that right by an acquiesence of fifteen years, or by his own voluntary agreement;—and in this case there is no pretence that he had parted with his right by his own agreement. *Norton* v. *Voluntine*, 14 Vt. 239. *Mitchell* v. *Walker*, 2 Aik. 266. *Shumway* v. *Simons*, 1 Vt. 53. COLLAMER, J., in *Mattocks* v. *Bellamy*, 8 Vt. 469. 1 B. & P. 400.

The opinion of the court was delivered by

BENNETT, J. In 1840 the defendant diverted a stream of water from the course, in which it was then running across his land, by reason of which the plaintiff's land was overflowed and injured; and this action was brought to recover the damage, which the plaintiff claims, she has sustained. The case shows that ever before and until 1830 the stream had run in a given channel, and in that year the stream, in a sudden freshet, had changed its course upon the defendant's land, and that it had been permitted to run in its new

Woodbury *v.* Short.

channel until 1840, when the defendant turned it back into its former channel. The question, now presented for our consideration, is, whether the defendant, after so great a lapse of time, had such a right?

It is not necessary to decide, what would have been the rights of the defendant, to have turned back this stream into its former channel, immediately upon its having changed its course, in 1830, and upon that question no opinion is intended to be expressed; but whether that right should exist after a lapse of ten years, when it may be supposed that new rights and new interests may have been acquired, is the question before us.

In Hargrave's Tracts, *De jure maris,* it is laid down, that, when a water course, running between the lands of A. and B., leaves its course and suddenly and sensibly makes its entire channel on the land of A., it wholly belongs to him. See also Angell on Water Courses 222, Sect. 4, on Reliction. In *Ex parte Jennings,* 6 Cowen 518, we have in note (*a.*) a full extract from Sir Matthew Hale's treatise, *De jure maris;* and on page 537 it is also said, if a river, running between the lands of A. and B., leaves its course and sensibly makes its channel entirely in the lands of A., the whole river belongs to A. The maxim in such case is, *Aqua cedit solo.* In the case before us the entire stream was running upon the land of the defendant, at the point where the course was changed; and we think, that, at all events, if he would restore the stream to its former course, he must have done it within some reasonable time, and before new interests should have been naturally acquired in the course, in which it had been permitted to run.

We may, in this case, well apply the doctrine of *acquiescence,* which is made the ground of acquiring property in the *soil,* which, by the immediate and manifest power of a stream of water, is suddenly taken from one man's estate and carried upon that of another. If it is permitted to remain upon the land, where it is carried, until it cements and coalesces with the soil, the property is changed, and there is no right to reclaim the soil, which had been carried away. The defendant, in this case, having, as it must be supposed, *acquiesced* in the running of this stream in its new channel, and in the creation of new interests, must not now be permitted to disturb them.

The result is, that the judgment of the county court is reversed and the cause remanded for trial.