Judgment for defendant.

---

ORVILLE FORD AND WIFE *v.* LEWIS WHITLOCK.

*Diversion of water course.*

The owner of a piece of land through which a stream of water runs, may change the course of the stream on his own land to any extent, if he does not thereby diminish, in any material degree, the beneficial use of the stream to other proprietors either above or below.

If the diversion affects such proprietors unfavorably, it requires the lapse of fifteen years to give the right of continuing the stream in the new channel.

If the diversion affects other proprietors favorably, and they are allowed to expend money in erections in faith of the stream running in the new channel, the person diverting the stream cannot then restore it to its former channel to the injury of such proprietors.

The law as to running streams is, in this respect, analogous to that respecting the dedication of land to public use.

ACTION ON THE CASE for obstructing a water course. Plea, the general issue, trial by jury, March Term, 1854,— PIERPOINT, J., presiding. The plaintiffs owned a piece of land through which the stream of water in question passed, and upon which stood a saw-mill. The defendant owned the piece of land on said stream, below and adjoining to that of the plaintiff's. The stream upon the defendant's land formerly took a cicuitous course, and in 1828, the person who then owned the land cut a ditch about eight rods in length through which he turned said stream, and thereby avoided

a circuit in it of about forty rods,—and the stream thereafter run in said new channel until the defendant became the owner of the premises.

The plaintiff's testimony tended to show that since they had become the owners of the saw-mill, which was on the 19th of February, 1851, the defendant had maintained a dam in said ditch, or new course which obstructed the free course of the water in it, and caused it to flow back and retard the action of said mill. The defendant's testimony tended to show that he became the owner of his premises in 1834, that in the spring of 1835 he commenced the foundations of the dam in the new channel, and thereby caused some obstruction to the free course of the water, that they were increased in 1836, and that in 1837 he turned the stream back into its former and more circuitous channel on his land; that the saw-mill now owned by the plaintiffs was built in 1836, and commenced running in the fall of that year; that the dam had been maintained from the time of its first erection to the present, except that since the erection of the saw-mill it had for the first time in September, 1836, and at several times since, been forcibly removed by the owners of said saw-mill, and as often rebuilt by the defendant.

The defendant requested the court to charge the jury that he had the right to restore the stream to its old and natural channel on his land. The court refused so to charge, but did charge and instruct the jury among other things not objected to, that if they found that the grantor of the defendant, turned the stream upon the land now owned by the defendant, in the manner above stated, in 1828, and he and his grantees caused it so to flow until 1836, that the defendant had no right then to place any obstructions in the stream, as it then run, which should cause the water to flow back upon the plaintiffs' land so as to materially injure the same, either for the purpose of turning the stream into its original channel or for any other purpose; and if he did so obstruct the flow of the water, the plaintiffs or their grantors would be justified in removing the obstructions, and the plaintiffs in this suit would be entitled to recover such damages as had been occasioned to their premises by reason of such obstructions, after they owned and occupied the premises, and before the commencement of this suit. Verdict for the plaintiffs. Exceptions by the defendant.

*Edgerton & Allen,* for the defendant.

*A. A. Nicholson* and *E. N. Briggs,* for the plaintiffs.

The opinion of the court was delivered by

REDFIELD, CH. J. I. There can be no manner of doubt whatever of the right of the owner of land, through which a stream runs to change the course of the stream, on his own land, to any extent, if he does not thereby diminish, in any material degree, the beneficial use to other proprietors, either above or below. And in so doing he requires no consent of such other proprietors, and has the same right to continue this change from the first as after the lapse of fifteen years. And he may in such case restore the stream to its former channel at any time, even after the lapse of fifteen years. *Norton* v. *Volentine,* 14 Vt. 239.

II. But where such diversion affects those above or below unfavorably, it requires fifteen years to give the right to continue the stream in the new channel. But if the diversion affects other proprietors favorably, and the party on whose land the diversion is made acquiesces in the stream running in the new channel, for so long a time that new rights may be presumed to have accrued, or have in fact accrued, in faith of the new state of the stream, the party is bound by such acquiescence, and cannot return the stream to its former channel. This is the very point decided in *Woodbury* v. *Short,* 17 Vt. 387. The only appreciable difference between that case and the present is, that there the change in the bed of the stream was made by a freshet, and here by the act of defendant, which makes the case stronger against the defendant. We have no occasion to discuss the principle of that decision. It seems to us analogous to the rules of law, which have been applied to dedications to public use of land, or the use of land; and it seems to be highly equitable and just, that where one has by his own act, either originally changed the course of a stream, or suffered it to remain in a channel, cut by some sudden convulsion, until others have expended money in erections, as in the present case, in faith of the stream running in the new channel, or as in the case of *Woodbury* v. *Short,* may be supposed to have done so, that the stream should not then be allowed to be restored to its former channel to the detriment of other riparian proprietors.

There may be a remote analogy between this case and that of a license in fact, which is not regarded as irrevocable at law, until after an acquiescence of fifteen years, or more. But the law as to running streams is also analogous to public rights like highways and commons, inasmuch as a large number of persons have an interest in fresh water streams and they are therefore *quasi* of public concern, and the rules of public dedications have been applied to an acquiescence in a new bed for such stream, and one who cuts such bed on his own land and thereby renders the use of the stream beneficial to other proprietors, in a different mode, is bound to the same extent and in as short a period, as if he alters the fence upon a highway or common, and thereby gives privileges to the public. He cannot often recall them after the shortest term. Any term is sufficient, which satisfies the jury, that the public were justified, in treating it as a *permanent* dedication. And here the testimony seems to have been all in one direction on that question, and therefore there was no necessity of submitting it to the jury.

Judgment affirmed.