## PIERCE vs. KINNEY.

Where a stream running across the defendant's land, and thence upon the plaintiff's land, below, during a flood broke through its bank, making an opening sufficient to carry all the water ordinarily running, and through this new channel the water would have continued to run, if not prevented; *Held* that the defendant had a right, for his own protection, to erect a barrier or levee across the crevasse or new channel, for the purpose of confining the waters within their original channel; provided he did not build such barrier too high, nor project it into the stream, so as to prevent the water running in its accustomed channel and with its usual force.

*Held, also*, that the defendant was not bound to keep the original channel of the creek open upon his own lands, as a condition to his right to maintain such barrier. And that he was not liable to the plaintiff for any damages that might ensue from a failure to do so.

THE parties own farms adjoining each other, the plaintiff's being on the north of the defendant's. A stream of water runs from the plaintiff's farm on the defendant's, and after running east on the defendant's farm nearly parallel to, and only a short distance from the division line between them, turns northwardly, and again runs on the plaintiff's land a short distance before emptying in the river. During a flood, in 1863, the stream broke through its south bank, making an opening sufficient to carry all the water ordinarily running, and through this new channel the water would thereafter have continued to run had not the defendant, in July, 1863, erected a barrier or levee across this crevasse or new channel, by which the water was forced back into its original channel. At this time the plaintiff's farm was owned by one Bennett, who sold it to the plaintiff in 1865. From 1863 to 1865 the water continued to flow in its natural channel, without special cause of complaint from Bennett. But in 1865, during another flood, dirt and gravel were brought down from the plaintiff's land by the stream, and deposited in the bed of the stream, some few rods below where this barrier was erected, to such an extent as to fill the bed of the stream, and crowd the water out of such channel to the north,

Pierce *v*. Kinney.

when it leached over lands of the plaintiff, and seriously, injured their value. The plaintiff now brings his action to recover the damage done to his lands, and alleges, as the substantial wrong done by the defendant, the erection of the barrier or levee across the crevasse, in 1863. Upon the trial of the cause the plaintiff requested the judge to charge the jury " that after the flood of 1863, if the defendant would restore the south bank to its original height as a protection to his own land on the south, he was under obligation to restore the channel at the same time to its original condition," i. e., to remove any sand or gravel bar that may have been formed below there upon the defendant's lands by which the water was thrown upon the plaintiff's land. To the refusal so to charge the plaintiff excepted. The jury found a verdict for the defendant, and the case and exceptions were ordered to be heard in this court.

*A. P. Smith*, for the plaintiff.

*C. B. Sedgwick*, for the defendant.

*By the Court*, BOARDMAN, J. It is well to understand that the jury, by their verdict, have established certain facts which this court will not undertake to review. It must be taken as true that the defendant, in building the barrier against the crevasse, erected it on the same line, and of no more than an equal height with the original bank of the creek; that by such barrier the creek was restored to its original channel at that point. This, the jury were charged, the defendant had a right to do, and no exception is taken to that portion of the charge. In finding for the defendant they must necessarily have found those facts. One other fact in the case appears to have been overlooked in their points. It is this. After the building of the barrier, the water followed its old channel till it

reached the plaintiff's land, for a year and a half before gravel beds were formed of sufficient depth to fill up such original channel and thereby throw the water to the north. upon the plaintiff's land, to his serious damage. The gravel bed that causes the damage in question was not there in 1863, but was chiefly produced by a flood in 1865. These facts being understood, it becomes simply a question whether the defendant is bound to keep the channel of the creek open upon his own lands as a condition to his right to maintain the barrier which he has erected for self protection. If he fails to do so, is he liable to the plaintiff for the damages that ensue. Such is the proposition presented by the exceptions.

It was and is conceded that the defendant had a right to erect the barrier across the new channel made by the flood, and thus protect his orchard and farm from serious injury. The defendant claims such right unconditionally. The plaintiff, on the other hand, insists that such right cannot be exercised without at the same time opening, and thereafter keeping open, the original bed of the creek, so far as it runs on his own land, and delivering the water to the plaintiff at his boundary, in its ordinary and accustomed channel.

I find no sanction for the claim thus set up by the plaintiff. *Angell, on Water Courses,* (§ 333,) says: "A riparian proprietor may in fact legally erect any work in order to prevent his lands being overflowed by any change of the natural state of the river, and to prevent the old course of the river from being altered;" citing *Rex* v. *Trafford,* (1 *B. & Adol.* 874, and 8 *Bing.* 204;) *Farquharsen* v. *Farquharsen,* (3 *Bligh Parl. R., N. S.,* 421, 422.) But, says *Angell,* (§ 334,) he "has no right to build anything which, in times of *ordinary* flood, will throw the waters on the grounds of another proprietor, so as to overflow and injure them. * * * *Erskine* * * * says: 'When a river threatens an alteration of its present channel, to the dam-

age of the adjacent proprietor, it is lawful for him to build a bulwark, *ripæ muniendæ causa,* to prevent the loss of ground that is threatened; so that a proprietor whose grounds are threatened to be washed away, may, for the purpose of protecting his own property, * * raise a bank for his own security; but this bulwark must be so erected as to prejudice neither the navigation nor the grounds on the opposite side of the river.' "

The owner of a water course may change its course on his own land, if he does not thereby injure his neighbor. "So he may change it back to its original channel," unless others, by expenditure of money, have acquired the right to its use in the new channel. (*Wash. on Easements*, 360, citing *Woodbury* v. *Shut*, 17 *Verm.* 387.)

It may fairly be inferred from the authorities cited, that the defendant had the right to erect this barrier, and thus confine the waters within their original channel. Nor is there any intimation that he is responsible for any damage to his neighbor, unless it is the direct consequence of his building his barrier too high, or projecting it into the stream so as to prevent the water running in its accustomed channel and with its usual force. He has the right to repair or rebuild the broken bank—not to make a different one. If he does this, no direct injury is done to his neighbor. The injury that may arise from a gravel bed lower down the stream is not due to the interposed barrier. It arises from an obstacle created by the natural flow of the stream. Had no *crevasse* been made, the gravel bank might, and doubtless would, have been deposited by the natural action of the stream. The *crevasse* having been opened and the barrier immediately interposed, it stands as though the defendant had done nothing, and yet the gravel bank is there doing the plaintiff damage.

Where the bank was broken so as to form a new channel for the water, it was optional with the defendant to close the opening and restore the water to its original

channel, or let it pursue its new course. So if there were several openings at different places, he might close all or any of them, or he might leave them all open. If he had closed one which injured himself, and not closed one which injured the plaintiff, would an action lie for the damage? Such an action would seem to be founded on what the defendant had not done, rather than on what he had lawfully done.

Again; if a party's mill-dam is carried off by a flood which makes a gravel bar at a point below, changing the channel of the stream, may he not rebuild his dam unless he cuts away such bar and restores the water to its channel? Is he liable for the existence of the bar? Was it his act of omission or commission that put it there? On the contrary, it is evident this obstruction is the work of nature, produced by natural causes, unaffected by man's act, except remotely and accidentally. It does not furnish a cause of action. The interests to be affected, the responsibilities to be incurred and consequences involved by a contrary decision, are too momentous to be disregarded. The whole bed of the lower Mississippi is earth brought down and deposited by its waters. The lands upon its borders are protected by levees. Holland is rescued from the ocean by its dykes. Are we to say that these dykes and levees may not be defended against destruction, lest by so doing they shall break away somewhere else? Must one man's farm be destroyed that it may be useful to drain the water from his neighbor's? Such was evidently the view of the law entertained by the plaintiff's attorney when this action was brought. There is no allusion to a gravel bank placed there by the defendant, which caused the damages, but it was "logs, stones, earth and rubbish," put by the defendant into said stream, and upon the banks thereof, opposite the land of the plaintiff, which were claimed to be the cause of the damage. It is evident the action was brought upon the theory that the barrier had

been raised too high, or had been projected into the stream so far as to divert it from its natural course. But the jury, by their verdict, have found against any such claim. Now it is sought to sustain the action, not upon what the defendant has lawfully done, but upon the theory of negligence in not having done what by law he was required to do; and there is not a word in the complaint to indicate such a ground for sustaining the action. If the position were tenable it might be made to answer, but in my judgment both the complaint and the law must be amended before it will be adjudged that an error has been committed, furnishing a ground for a new trial.

The motion for a new trial should be denied, with costs, and judgment ordered for the defendant on the verdict.(*a*)

[BROOME GENERAL TERM, January 26, 1869. *Balcom, Boardman* and *Parker*, Justices.]

(*a*) This judgment was affirmed in the Court of Appeals in March 1871, but it is understood no opinion was written in the case.