WEST and another, Respondents, vs. THE FOX RIVER PAPER COMPANY, imp., Appellant.

*May 25 — September 27, 1892.*

*Watercourses: Island dividing stream: Riparian rights: Removal of part of island: Estoppel.*

1. Where an island dividing a river into two channels is meandered and sold by the government as a separate tract, the purchaser becomes a riparian proprietor on both channels, each of which, in respect to such rights, is to be treated as a separate river.

2. Plaintiff, being the owner of such an island and of the main-land on the south side of the river, removed a portion of the upper end of the island, so that its head was below the landing of a wing dam on the north side of the river belonging to defendants and which had theretofore been below the head of the island. In place of the portion removed, plaintiff built walls and other works extending nearly or quite as far up the river as the island had done. Some years afterwards the defendants joined with plaintiff and others in building a dam across the north channel from the foot of defendants' wing dam to plaintiff's said walls and works, and for many years thereafter defendants used said cross dam for hydraulic purposes in connection with plaintiff. Defendants never expended any money or in any way changed the use of their water-power because of the removal of the head of the island. *Held,* that plaintiff did not by such removal lose his right, as against the defendants, to use one half of the water flowing in the north channel of the river at the head of the island.

3. In an action to restrain defendants from using more than one half of the water flowing in such north channel, the fact that plaintiff's dam is an obstruction to navigation, or that it causes flowage of lands above, and the manner in which the parties return the water to the river below their dam, do not affect the question of plaintiff's right.

APPEAL from the Circuit Court for *Outagamie* County.

The action was brought to obtain an adjudication as to what share and proportion of the power furnished by Fox river and of the flow of water therein at a certain point in the city of Appleton, belongs to the plaintiff *Edward West* or his grantees, on account of the ownership of the south bank of the main channel of the river and the ownership of both banks of the south channel thereof; and to restrain the defendant *Fox River Paper Company* and its grantees from using more than their proper share of the water. The facts are stated in the opinion. The *Fox River Paper Company* appeals from the judgment of the circuit court.

*F. W. Houghton*, attorney, and *Charles W. Felker*, of counsel, for the appellant, contended, *inter alia*, that the rights of the parties must now be determined according to the condition of things caused and acquiesced in by *West*. *Cobb v. Smith*, 16 Wis. 661; Gould, Waters (1st ed.), sec. 159; *Ford v. Whitlock*, 27 Vt. 265; *Woodbury v. Short*, 17 id. 387; *Taylor v. Hampton*, 4 McCord (S. C.), 96. If by reason of a permanent rise in the river from any cause the head of the island had become submerged, the riparian right of *West* would have been lost; and having by his own act caused the head of the island to become submerged, his right is clearly gone. *Taylor v. Hampton*, 4 McCord, 96; *Corning v. Gould*, 16 Wend. 530, 539; Angell, Watercourses (7th ed.), sec. 243*a et seq.* In determining the rights of adjoining riparian owners holding on the same shore of the stream, the rule is that, the starting point at the bank once fixed, the boundary line must run at right angles to the center of the stream. *Menasha W. W. Co. v.*

*Lawson,* 70 Wis. 600; *Bay City G. L. Co. v. Industrial Works,* 28 Mich. 182; *Clark v. Campau,* 19 id. 325. But as between riparian owners holding on opposite sides of a navigable stream, government subdivision lines do not run obliquely or swerve from the point where they strike the bank; but, in ascertaining the amount of land owned by each opposite riparian owner beneath the water, the government section or subdivision line goes from the point where it strikes the bank straight to the center of the stream, where it meets the corresponding subdivision or section line from the opposite shore. *Railroad Co. v. Schurmeir,* 7 Wall. 272; *Jones v. Pettibone,* 2 Wis. 308; *Walker v. Shepardson,* 4 id. 486; *Mariner v. Schulte,* 13 id. 692; *Arnold v. Elmore,* 16 id. 509; *Wis. R. I. Co. v. Lyons,* 30 id. 61; *Wright v. Day,* 33 id. 260; *Olson v. Merrill,* 42 id. 203; *Norcross v. Griffiths,* 65 id. 599; *Menasha W. W. Co. v. Lawson,* 70 id. 600; *Bidwell v. Webb,* 10 Minn. 59; *Andrews v. Stone,* id. 72; *Schurmeier v. St. Paul & P. R. Co.* id. 82.

For the respondent there was a brief by *Hooper & Hooper,* and oral argument by *Moses Hooper.* They argued, among other things, that the owners of the island and the south shore are entitled to the use of that share of the water which originally flowed in the south channel, and also of the one-half of that which flowed in the north channel. Where islands are meandered and sold as independent parcels of land by the United States, riparian ownership attaches to the same, and the different channels of the river are treated as separate rivers. See, besides cases cited in the opinion, *Tillotson v. Smith,* 32 N. H. 90, 95; *Murchie v. Gates,* 78 Me. 300; *Benson v. Morrow,* 61 Mo. 345; *Shoemaker v. Hatch,* 13 Nev. 261.

The following opinion was filed June 15, 1892:

ORTON, J. The testimony taken in this case, as contained in the printed case even, is very voluminous. The statement of facts will be brief, but sufficient to show the legal

West and another vs. The Fox River Paper Co.

questions involved. The foregoing is a diagram of the Fox river and Grand Chute island, at the place where the hydraulic works of the parties are situated.

The facts are as follows: At a point where the Fox river runs through sections 26 and 35, at the city of Appleton, the river is divided into two channels by Grand Chute island, of considerable length up and down the river, and containing about twenty-two acres. This island had been surveyed and its shores meandered, and had been sold by the United States as government land. In 1856 and 1857 the plaintiff, *Edward West,* was the owner of the island, and the owner of, or had the right to flow, the land on the south side of the south channel of the river down to the foot of the island, and on the south side of the river a considerable distance above the island; and built a mill-dam across said channel about 200 feet below the head of the island; and a wing dam, running up from the north side of the head of the island and the north end of said dam, northwest into the main channel of the river; and began to utilize the water-power created by said dams. By these works a part of the west end of the island was removed; and in 1870 *West* cut a canal lengthwise through the island, nearly central, and thereby made water-powers on each side of this canal, discharging the water into the north and south channels, the head in the canal being held by the said dam across the south channel and the said wing dam from the north side of the island. In order to open the head of the canal in connection with these dams, about 140 feet of the island at the upper end was removed, and the rocks therein used in the construction of a solid wall up from the north side of the island, in place of a part of the wing dam, the wing dam remaining mostly as first constructed.

The entire water-power afforded by the river is about 3,000 horse power.

In 1849 Amos Lawrence owned the land on the north

shore of the river opposite and over and against the head
of the island, and 800 feet above and 1,200 feet below,
with the right of flowage of 1,000 feet more above, and
built a wing dam, starting near the shore on the north side
nearly opposite to and below the head of the island, and
running up several hundred feet above the head of the
island, and out into the river, thereby developing a mill
power, discharging the water into the north channel below
the head of the island; and such wing dam, rebuilt, re-
paired, raised, strengthened, and extended, still remains.
In 1850 Lawrence constructed a canal or mill race from
the foot of said wing dam 600 feet down the north channel
of the river, near the north shore, affording a series of mill
powers, discharging the water into the north channel of
the river below and opposite said island.

In 1877 the water-power owners on both sides of the
north channel of the river at this point, together with
business men and citizens of the city of Appleton, in order
to improve and build up the city, obtained a charter of a
company without stock, and raised a fund of $9,185 for the
purpose of further improving said water-powers; and said
*Edward West*, the plaintiff, and Anson Bullard, who was
interested in the water-power on the north side of the
north channel, became subscribers to said fund. Said fund
was used by the company in building a dam across the
north channel of the river, starting from the foot of said
wing dam built by Lawrence on the north side of the north
channel, and extended south to near the head of the island,
and, if extended a few feet further, would have reached
the island about twelve feet below the head of it in its
natural condition; and this gap was filled by a wing wall
coming down to the island as it then was, on a line with
and using a part of a retaining wall built by *West* up from
the north side of the island. The wing dam built by *West*
from the north side of the head of the island out into the

river above, and the one built by Lawrence from near the
north side of the north channel opposite, came nearly to-
gether near the center of the river above, in the form of
an inverted " V," and in this way appropriated nearly the
whole power of the river, and made the power belonging
to either side much greater. After the cross dam had been
built by the company as above, the said wing dam built by
*West* above the cross dam was removed, but the said wing
dam built by Lawrence from the other side is still retained,
thus affording the defendants, as the grantees of Lawrence,
the additional advantage of an increased head within the
wing dam, by reason of the cross dam, and for building
mills on the cross dam, of which they have already availed
themselves.

This is a brief statement of the facts found by the court.
The learned judge before whom this case was tried person-
ally inspected these water-powers and the constructions by
which they have been made available to the parties, and he
was therefore peculiarly well qualified to understand and
weigh the testimony, in view of these physical monuments.
It is impossible for this court to be as well qualified as the
trial court to correctly find the facts. We shall, therefore,
accept the findings as verities in the case.

There are really only two questions on which the judg-
ment depends, and they are, (1) whether the defendants'
power on the north side has been made available by them
at a point opposite and below the head of the island in its
natural state; and (2) what proportion of the waters of the
river naturally flow in the south channel and the south
half of the north channel. To ascertain these facts a great
many witnesses who were personally cognizant of these
natural conditions many years ago had to be examined, and
testified from their recollection. It is not strange that
there was considerable difference in their recollection of
such conditions. They did not observe these physical con-

West and another vs. The Fox River Paper Co.

ditions at the time with any view or expectation that they would ever be called upon to testify of them. The occasion and facilities for observation at the time, and the reasons for their recollection, would naturally be various and different. The learned judge who heard them testify, and who was therefore able to apply the usual tests of credibility, and to reconcile their testimony if possible, and if not, to determine the truth between them, has unquestionably formed the best possible judgment of what were the facts. As to the first question, the court found that the defendants' power was made available, and their dam on the north side was, at a point even with and opposite to a point below the west or upper end of Grand Chute island. As to the proper proportion of the water-power belonging to the plaintiff by his ownership of the south and north shore of the south channel, and of the south shore of the north channel of the river, the court found — (1) that the plaintiff (or his grantees) is the owner of and entitled to the use " of the hydraulic power of one half of the flow of the north or main channel, and of the whole of the flow of the south channel, of the Fox river when it passes the head of Grand Chute island and the dams placed therein at or near the head of such island." (2) That the defendants " are the owners of and entitled to the use, for hydraulic power, of the one-half of the north or main channel of the Fox river when it passes the head of Grand Chute island and the dams placed therein at or near the head of such island." (3) " That the width of the south channel, near the head of Grand Chute island, as filled with water at the ordinary stage, was about 120 feet, and the width of the north channel near the head of Grand Chute island, as filled with water at the ordinary stage, was about 760 feet, and that the average depth of the two channels was nearly the same." (4) " That one seventh of the natural flow of said river in its natural state was appurtenant to and flowed

through the south channel, and six sevenths of the flow of said river was appurtenant to and flowed through the north channel." The conclusion of law following these findings of fact was, in effect, that the defendants ought to be enjoined and restrained from drawing water at any time from the mill pond or ponds on the Fox river, at or near the head of Grand Chute island, in the city of Appleton, in sections 26 and 35, to exceed three sevenths of the entire flow of water furnished by said river at said point. These are all the findings material to the questions of law raised on this appeal.

The principles of law on which the plaintiff's case depends are not many, but are important, and appear to be well settled, although arising upon somewhat novel and peculiar conditions. The Fox river, on the cross line of the dams which furnish water-power to both parties, is divided by this large island, which has been surveyed, meandered, and sold by the United States. The contention of the learned counsel of the respondents is, *first*, that riparian ownership attaches to this island, the same as to the main shores of the river. This is not contested by the learned counsel of the appellants. This principle is necessary to the plaintiff's claim to more than one half of the river, and seems to be well established by the authorities cited in respondents' brief, and rests in reason as well. Where the main-land on both sides of the stream, and the island dividing the stream, have been all and separately surveyed and sold to different persons by the government, it follows by necessary implication that the island was reserved from the grant of the main-land, and the *filum aquæ* is established in the center of the channels on both sides between the main-land and the island. To each owner of the opposite main-land the island becomes the opposite shore, and as to them two *fila aquæ* are established. Riparian rights are valuable property, and are attached to all land bordering

on a stream; and the owner of an island is as much enti-
tled to such rights as the owner of the main-land.    As said
by the learned counsel of the appellant in their brief: "In
the construction of a government grant, the government
survey is conclusive as to the river boundary."    *Bates v.
I. C. R. Co.* 1 Black, 204; *Lammers v. Nissen,* 4 Neb. 245.
The plaintiff *West* having become the purchaser of this sur-
veyed island, became a riparian proprietor on both chan-
nels of the river opposite to it.    In a late case cited in the
brief of the respondents,— *Wiggenhorn v. Kountz,* 23 Neb.
690,— very clearly stating this principle, the following au-
thorities are cited: *Stolp v. Hoyt,* 44 Ill. 223; *Trustees of
Hopkins' Academy v. Dickinson,* 9 Cush. 544; *People ex
rel. Tibbits v. Canal Appraisers,* 13 Wend. 355; *Buse v.
Russell,* 86 Mo. 209.    See other cases cited in respondents'
brief.    Each of these two channels is treated as a separate
river in respect to the riparian rights of the owner of the
island.

*Second.* It follows, therefore, that the plaintiff is entitled
to the natural flow of the south channel where his dam is
situated, for hydraulic purposes, and the whole thereof, by
reason of his being the owner of the island on one side, and
of the mainland on the other.    *Smith v. Ford,* 48 Wis. 116;
*Wall & Co. v. Cloud,* 3 Humph. 181; *Medway Co. v. Rom-
ney,* 9 C. B. (N. S.), 575.    The full expression of the plaint-
iff's right to the water-power to this extent should be that
he is the owner of the abutting land, and still owns the
riparian rights thereof, or the owner of the right of flow-
age or use of the abutting land for the purpose of landing
a dam thereon, and the owner of the dam built for the pur-
pose of making the water-power at that point available.
*Lawson v. Mowry,* 52 Wis. 219.    This may answer the rather
technical discussion of counsel on that subject.

So far, then, the plaintiff has established his right to an
injunction against the defendants from using to **exceed**

three sevenths of the waters of the river at that point for hydraulic purposes. But this is subject to certain contentions of the learned counsel of the appellants, which, if allowed, would defeat such right. *First.* That the removal of 140 feet from the upper end of the island in 1870 caused the upper end of the island to fall below the landing of the defendants' dam on the north side, and after that time the defendants were entitled to one half of the main river unaffected by the island. It is contended that this upper end of the island having been removed by the plaintiff voluntarily, it not only cannot be restored, but the submerged portion is no longer a part of the island, but a part of the river, and that the plaintiff can no longer claim that the defendants' dam is opposite to the island. The authorities cited by the learned counsel do not meet the conditions of this change in the head of the island. This principle belongs to the law of servitudes, mostly, when the use has been changed by the servient owner, and he thereby loses his right, as in *Taylor v. Hampton,* 4 McCord, 96; or where a stream had been changed on the land of one favorably to the owner of adjoining lands through which it formerly ran, and he expends money on the change, as in *Ford v. Whitlock,* 27 Vt. 265; or when, by a sudden and unusual flood, a stream had been so changed on the land of one as not to pass upon the lands of another, and it had been acquiesced in for ten years, as in *Woodbury v. Short,* 17 Vt. 387; or where the owner of the land had permitted a mill owner to flow it by means of his dam, and had acquiesced in it for ten years, as in *Cobb v. Smith,* 16 Wis. 661. Here the plaintiff had the right to build his dam abutting the island and extend it north to connect with the dam of the defendants, and on the line of the defendants' dam. He had built a wall and breakwater and made other constructions to direct the waters into the canal through the island and perfect the connection of his dam

with that of the defendants.   In doing so he made use of
the rock and earth in the head of the island above the dam.
After the dam had been completed and its connections se-
cured, the point of the island above the dam was no longer
necessary, but in the way of a necessary depth of water at
the mouth of the canal.   In the place of the point removed,
he built walls and other works, nearly if not quite as far
into the river as the island extended beyond the line of the
dam.   The defendants, with others, in 1877, long after this
point had been removed, acquiesced in it by building the
cross dam to connect with these works of the plaintiff at
the place where the point of the island had been removed;
and the defendants have continued to use the cross dam
for water-power since 1877, without question or objection,
and have acquiesced in the construction of the works as
they are.   Before the upper end of the island was removed,
the plaintiff had the right to construct his works on the
line of the works of the defendants on the north side, by
reason of the upper end of the island being above the works
of the defendants.   The defendants have never changed
their use of the power in consequence of the removal of
the upper point of the island, or expended any money in
any place to use the river or power, irrespective of the
island being opposite to the end of the dam.   Estoppel by
acquiescence is against the defendants to deny the right of
the plaintiff to maintain his dam as it is.   The plaintiff did
not remove the upper end of the island in order to change
its boundary, but to make use of it in the construction of
his works, and such works stand in the place of it.   These
considerations are mentioned to show that the principle
contended for is inapplicable to this case.   The contention
is plausible, but we are of the opinion that it is not perti-
nent to the peculiar circumstances of the case, and that
the plaintiff has not lost his right so obtained, and upon
which he has made such large expenditures, by the removal

of the upper end of the island so as to cause the upper end of the island, as it is, to be below the dam of the defendants.

*Second.* That the true line between opposite riparian proprietors should be a direct line across the river. It will be presumed that the circuit court found the point where the defendants' dam abutted on the north shore to be opposite to the island, upon the correct rule, unless it appears otherwise. There would appear to be margin enough in the distance — that the upper end of the island was above the dam of the defendants — to admit of any reasonable rule upon that question.

*Third.* That the plaintiff's dam is an obstruction to the navigation of the river. This question is not involved in this case. It appears to be clear enough that the river is not navigable at this point. The United States constructed a canal around the rapids in the river at this place to be used for navigation in place of the river proper, and for the reason that the river was not navigable.

*Fourth.* That the plaintiff's dam causes the flowage of lands above. Both parties have the right to flow lands above, under the mill-dam act. That is a question, however, between the land-owners above and the mill-owner at the dam, and not between the mill-owners themselves. To consider that question in this case would be trying another and new case, and that, too, without parties.

*Fifth.* The manner in which the parties return the water to the river below their dams and mills has nothing to do with the question here involved, which is, What proportion of the river and power belongs to each of the parties? and the remedy is an injunction against the use of an excess of such proportion. Each party is under a legal obligation not to use his power to the injury of the other. The use of the power is not sought to be regulated in this action. None of these contentions appear to affect the right of the

plaintiff, established as above, to use the whole of the south channel and one half of the north channel of the river for hydraulic purposes.

For convenience I have used the terms plaintiff and defendants. The parties in interest will appear from the record. This is a very important suit, and hàs been presented to this court by very able and eminent counsel in the best manner possible. We have felt compelled to accept the findings of the court upon the questions of fact, without any particular examination of the testimony to ascertain their correctness, for the reasons already suggested. On the findings of the court the legal conclusions, as above, appear to be clear and indisputable.

*By the Court.*— The judgment of the circuit court is affirmed.

A motion for a rehearing was denied September 27, 1892.