HENRY FINCH v. G. G. SMITH, et al.

Western Section. March 2, 1928.

66

Pierce & Fry, of Union City, for appellant.

G. N. and H. H. Lannom, and E. H. Lannom, of Union City, for appellee.

SENTER, J. The original bill was filed by complainant against the defendants for the purpose of enjoining the defendants from rebuilding and repairing an old levee or dike, by which it is alleged in the bill would result in holding back and overflowing complainant's lands by diverting the water from the natural flow and backing it up and causing it to run over the land of complainant, resulting in irreparable damage and injury to the land of complainant. The defendants answered the bill and denied the material allegations; and denied that complainant was entitled to the injunctive relief sought for reasons set forth in the answer.

At the hearing of the cause the Chancellor found the issues in favor of complainant, and sustained the bill, and decreed a perpetual injunction enjoining and restraining the defendants from rebuilding or repairing the levee in question. The defendants have appealed from this action of the Chancellor, and in granting the injunctive relief sought.

The facts necessary to be set out will be summarized and stated as follows: Complainant is the owner of the land described in the bill, and the defendants are the owners of the land adjoining, and lying on the south of the lands of complainant. There is a public road running north and south and complainant's land as well as the defendants' land is traversed by this road which is built on a levee. There is a creek running north and south on the east side of the road, but this creek formerly ran in a southeasterly direction, but the channel was changed many years ago to its present course.

It appears that about thirty-five years before the bill was filed in this cause, Finch, Sr., the father of complainant, who then owned the land now owned by complainant on the west side of the public road, built a levee or dike from the high ground on the west to a point near the present road levee on the east, and at the same time dug a ditch running east and west along the north side of this dike which ditch emptied into a branch of the creek and passed under a bridge on the road, thereby conveying the water into the creek on the east side of the road. This levee and ditch ran along the north boundary line of complainant's land and operated to catch the water which flowed from the north in a southerly or southeasterly direction and conveyed the same by means of the ditch into the creek. Prior to the erection of this levee or dike by the father of complainant,

the natural flow of the overflow and surface water was from the north to the south, and after this levee or dike was constructed the natural flow of the water was changed and conveyed into the creek by the ditch which ran east and west, thereby affording protection from the water to the land of complainant and also the land of defendants lying on the west side of the public road and south of complainant's land. It also appears that many years ago, thirty or thirty-five years, Obion county had built a short levee running east and west along or near the north boundary line of the land now owned by the defendants, which levee was erected and used by the county for a road. The two respective levees form the basis of the controversy between the parties in this suit. The levee originally built by the county along the north boundary line of the defendant's land was abandoned by the county as a road levee many years ago. The defendants purchased their land in 1910. At the time they purchased their land this old levee which had been abandoned by the county, had been partly destroyed or blown down with dynamite, and about 1912, after the defendants became the owners, they repaired or reconstructed the old levee. There is some controversy in the record as to whether this old road levee had been completely destroyed prior to the time that defendants bought the land, but we concur in the finding of the facts by the Chancellor on that question that it had been rendered ineffectual to operate as a protection, whether it had been completely destroyed or not. From time to time since 1912 the defendants had repaired this levee as the same would become washed in places.

It also appears that in the spring of 1924 the land owners affected by the creek on the east side of the levee including the complainant and the defendants, and other land owners, entered into a written agreement which provided for the changing of the present course of the creek which runs north and south on the east side of the levee, and a large part of the record and the evidence is devoted to certain matters in controversy with reference to that proposed change, but we do not think this question becomes important or material to a determination of the questions made on this appeal.

A few days before the bill was filed in this cause this levee or dike on the defendants' land (which we will refer to for the purpose of distinguishing it from other levees and dikes referred to in the record, as the defendants' levee) had been washed down, or partly washed down as the result of a heavy rain, and the defendants were engaged in repairing or rebuilding this levee, and it was to enjoin and restrain them from building and maintaining the levee that the original bill was filed by complainant. It also appears that since the complainant became the owner of the tract of land formerly owned by his father, and on which his father built the dike and ditch along

the north side of the tract, the complainant plowed down or otherwise destroyed this old dike and filled up the ditch running along the north side of the old dike, which caused the water falling on the west side of the public road to resume its natural course of flowage and to flow down and across the lands of defendants. The record does not disclose definitely just when this old dike was plowed down or otherwise destroyed by complainant but it was probably three to five years before the bill was filed in this cause. We think it clear from the record that this old dike and the ditch running east and west across the north boundary line of the land of complainant on the west side of the public road, and built by complainant's father who then owned the land, was kept up and maintained for a period of more than twenty years before it was plowed down, and that during the time that it existed the natural course of the water from north to south had been changed and diverted so as to flow to the east finding an outlet in the check on the east side of the levee.

Appellants, the defendants, make the contention that they had acquired a right by prescription to maintain the levee of defendants, even though it had the effect to back up the water on the land of complainant, and also to force the water under a bridge near their north line on the public road and empty it into the creek on the east side of the public road which added to the volume of water carried by the creek and in flood time would overflow the land of complainant on the east side of the public road. It being further contended by the defendants that the levee built by the father of complainant with the ditch along its north side which had been built more than thirty years ago, and which had changed the natural course of the flowage of the water, and which had continued for more than twenty years before the levee was plowed down by complainant, gave to them a prescriptive right to have the water continue to flow in that direction, and that the complainant by plowing down or destroying the levee or dike, thereby causing the water to again flow to the south and over their lands, violated the prescriptive rights of the defendants.

The several assignments of error raise the questions as above stated, hence it is not necessary to consider in detail each of the several assignments. Before we proceed to a consideration of the assignments of error we will first dispose of the question made by appellee, to the effect that the defendants, in their answer, did not specifically plead the acquired right by prescription now relied upon. In support of this contention by appellee we are cited and referred to the cases of Railroad v. Ferguson, 105 Tenn., 552; Shields v. Schiff, 134 U. S., 355; McKyring v. Bull, 16 N. Y., 307; Matthews v. Ferris, 45 Cal., 51. Without reviewing these cases which contain a sound statement of the rule, we think that the answer sufficiently

presents the issue here relied upon by appellants. The answer alleged the erection of the old dike by complainant's father and the effect that the dike had upon changing the natural flow of the water, and that it had remained in that condition for more than twenty years; also that the dike originally erected by the county for road purposes had remained for more than twenty years, and had been restored by repairng it to its original condition from time to time as conditions necessitated. These allegations in the answer set up the real defense of a right by prescription having been acquired by the defendant.

The question for the consideration and determination presented on this appeal is whether under the facts as above set forth, the defendants are entitled by any prescriptive rights to maintain the levee as a protection against the water coming down from the north since the complainant had plowed down or destroyed the old dike erected by his father, and also whether the defendants and their predecessors in ownership had acquired a prescriptive right to maintain the levee on their land, which it is alleged had been there for more than twenty years.

Appellants rely largely upon the case of Ry. Co. v. Mossman, 90 Tenn., 158, in support of their second proposition. In that case it appears that Mossman owned the land adjoining the right of way of the railroad company, and which was higher than the land where the railroad embankment had been made. In the statement of the facts of that case by Mr. Justice Lurton, who wrote the opinion for the court, it is said: "His lands lie upon slightly higher level than the company's right of way, or the lands upon the opposite side of the railroad. There is evidence to show that, but for the embankment constructed and maintained by the railroad company, waters falling upon Mossman's land as a rain or snow, or flowing upon his lands from those at a still higher level, would naturally run across the railway and thence upon lower lands beyond, and finally to a small branch. By the construction of this railway embankment and its maintenance without culverts or other means for the passage of water, surface water has backed back upon his lands, where it accumulates in low spots and stands, making his lands swampy, and in part, unfit for agricultural use. This embankment was constructed some thirty years before this suit was brought and during all this time the right of flowage claimed by Mossman has been impeded and surface water backed upon his lands."

The court in that case, after reviewing the usual rule, that lands lying at a lower level are burthened with the servitude of receiving all waters which naturally flow down to them from lands adjoining and upon a higher level, then proceeds to a discussion of the question of the right of the railroad company by prescription to continue

to maintain the embankment without culverts or openings which had continued for a period of more than twenty years, and in this connection it is said by the court:

"The period within which, by prescription, an easement may be acquired or a servitude imposed has been settled as twenty years (11 Lea, 382). If this embankment has been continuously maintained for a period of twenty years without interruption, by suit or otherwise and during all this time surface water which would, by nature, flow upon the lands of the railway company, has been prevented from flowing and has backed up on the higher lands, then there arises a presumption that the right of flowage upon the lower lands has been, by grant, surrendered, and that the lower lands have, by grant, secured the right to accumulate surface water upon the lands lying adjacent and subject to such an easement."

In support of the above statement Mr. Justice Lurton cited Wood on the Law of Nuisance, secs. 353-354. It is also said in that case by the court that there is nothing in the opinion that conflicts with the case of Railroad v. Hays, 11 Lea, 382. In Railroad v. Hays it was held that the railroad company had recognized the duty of providing for drainage of the adjoining lands affected by the railroad embankment, and that the suit in that case was for the neglect of the railroad to keep open a ditch, constructed and kept open for years for that purpose. It was said by the court that that was a recognition of the servitude in favor of the estate upon a higher level. The two cases were distinguished by the court because of the fact in the Mossman case the railroad company had never at any time during the thirty years period that the embankment had existed, made any provision for carrying the water under the railroad by culverts or bridges, while in the Hays case the railroad company had conveyed the water by a ditch along its right of way to a trestle or bridge, thereby recognizing the servitude.

Comparing the facts of Railway v. Mossman, supra, and the rule there announced, with the facts of the case we now have under consideration, there is this distinction. In the present case the dike or levee was an embankment originally constructed by Obion county as a roadway. After the road was abandoned by the county this embankment was partly if not wholly destroyed by some person or persons, not fully disclosed by the record, and remained in this condition until repaired by the present owners, the defendants. It does not definitely appear from the record just when this embankment was dynamited or torn down, in whole or in part, but it was rendered ineffectual for the purpose of holding the water back on the adjoining land, and it was in this condition when the defendants repaired it or rebuilt it. It does not appear that this original

embankment would have been sufficient to hold the water back off of the defendant's land unless it was repaired or rebuilt and restored to its former condition. The defendants purchased this land in 1910, and at the time they acquired ownership this levee was not then in condition to prevent the flow of water across defendants' land. It was repaired in 1912 for the first time by the defendants, and because of washes and overflows it has been repaired by defendants since that time. The instance could be made that in the case of Railway Co. against Mossman, the railroad company at any time after twenty years had expired with the embankment intact and effectual, could have made such repairs to the levee as to continue it in that condition, in the event the embankment should become washed or impaired. This reasoning is no doubt sound if it appeared that the embankment had continued for a period of twenty years, and became impaired or damaged by erosions or the elements, and the easement having been already acquired, the owner could restore it or repair it. But such are not the facts in this case. The levee had been blown up by dynamite and rendered ineffectual for the purposes of protecting the lower land from the natural course of the water. It is not contended that the levee since that time had been repaired and restored to its former condition for a period of twenty years. When this levee was dynamited and otherwise destroyed by agencies other than the elements, and this record discloses that the complainant Finch, who owned the land on the north and immediately adjoining assisted in blowing the levee up, and the result of this act was restoring the lower lands now owned by the defendant to the original state of servitude, and restoring the lands of complainant to its original dominant state. If the defendants had rebuilt this levee, and maintained it to a state of effectual efficiency for a period of twenty years they would have regained the right by prescription to continue to so maintain it. It would then come within the rule of Railroad v. Mossman, supra. However, it would require the full period of twenty years to have fixed this right in the defendant.

The conclusion we reach is, that the defendants, not having by themselves, or their predecessors in ownership, maintained this levee, for a period of twenty years, they have not acquired an easement, or a prescriptive right to continue to maintain it. This conclusion rests upon the evidence that prior to the time that defendants purchased this land the old levee originally built by the county, and which had been abandoned, had been either destroyed, or so far impaired as to render it ineffectual to hold the water, and that it was rebuilt or repaired in 1922 by the defendants after they acquired the ownership. Hence, it had not been maintained for a period of twenty years at the time they were enjoined from repairing or rebuild-

ing it. However, the further question is made by appellants, that they would have the right to maintain this levee as a protection against the water that now flows over and across their lands, and which so seriously damages the land as well as the homes of the defendants, because of the destruction by complainant of the old dike built by his father and which had continued for more than twenty years, and which had operated to change the natural flow of the water, and formed a new natural flow. This, we think, is the serious question in the case.

While there is some conflict in the evidence as to whether this dike or levee built by Finch, Sr., the father of complainant, thirty or more years ago, along his north boundary line, was destroyed or plowed down by complainant, or whether the lands to the north of the dike had so filled by sediment during the course of years as to bring the land to a practical level with the old dike, we are of the opinion that by a decided preponderance of the evidence, this old dike or levee was either plowed down by · complainant or by his procurement within recent years, probably three to five years. It had continued for thirty or more years. The result of destroying that levee or dike, and permitting or causing the ditch running alongside of the levee on the north to become filled up, resulted in charging the flow of water to the south and southwest, and onto the lands of defendants, and resulting in overflowing their valley lands and washing it badly in places and seriously damaging the houses in which the defendants lived by causing the water to accumulate in ponds in front of their houses and yards. As long as this old levee remained it operated to protect the defendants from surface water and overflow water, but after it had been plowed down or destroyed, it resulted also in washing down in places and so far impairing the levee of defendants on defendants' land, that it necessitated repairing their levee. The question is therefore presented that, independent of the alleged right of defendants to maintain their levee by any prescriptive right, that they and their predecessors in ownership, having acquired the prescriptive right to have complainant to maintain the levee erected by his father, and the ditch, which carried the water through the ditch east under the levee bridge on the public road and into the creek, whether they would have the right to preserve their right acquired by prescription, and to this end could repair or rebuild a levee on their own land in order to protect their land from the flow of water resulting from the act of complainant in plowing down or destroying the old levee?

In the case of Mathison v. Hoffman, 77 Mich., 420, 6 L. R. A., 349, the rule is thus stated in the headnote:

> "One who has taken the water of a stream from the original channel, and has continued to divert and enjoy it for a period

beyond the limit of the statute of limitations as to real actions, cannot afterward be permitted to restore it to its original state when it will have the effect of destroying or materially injuring the property through or by which it formerly flowed."

In the case of Drainage District v. Wabash R. Co., 299, Ill., 299, reported and annotated in 22 A. L. R., 944, on page 951, after discussing the general rule to the effect that a lower proprietor cannot do anything to obstruct the natural flow of surface water and cast it back upon the land above, it is said by the court:

"But when the owners of the dominant heritage, with the acquiescence of the servient owners, have diverted the water from its natural course and established an artificial channel, through which water has had an unvexed and uninterrupted flow, for more than twenty years, mutual and reciprocal rights have been acquired by prescription, exempting the dominant owner from the duty of restoring the water to its original course, and forever releasing the servient estate from the burden of the easement which existed in the dominant estate."

Thompson on Real Property, Vol. 1, secs. 605, 723, states the general rule as follows:

"Reciprocal Easements as to Artificial Water Rights.—An artificial channel in place of the natural channel cannot be changed to the detriment of those who have enjoyed the natural channel for the prescriptive period. If a riparian owner changes the natural flow of the stream, other proprietors favorably affected by the change may acquire an easement in the new water course by prescription, so that the flow of the water cannot be changed back to its original condition."

In support of the above announced rule, see Broadwell Special Drainage Dist. No. 1 v. Lawrence, 231 Ill., 86; Sheppardson v. Perkins, 58 N. H., 354; Belknap v. Trimble, 3 Page (N. Y.), 577; Smith v. Youmans, 96 Wis., 103, 37 L. R. A., 285, 65 Am. St. R., 30.

On this same subject, and in the same section, on page 724, it is further stated by the author:

"Thus, if one diverts a stream into a new channel in which it continues to run, with the acquiesence of the other proprietors affected by the change, for so long a time that new rights may be presumed to have accrued, the stream cannot be returned to its former channel to the injury of such other proprietors." Citing Woodbury v. Short, 17 Vt., 387, 44 Am. Dec., 344; Norton v. Volentine, 14 Vt., 239, 39 Am. Dec., 220; Pewaukee v. Savoy, 103 Wis., 271, 79 N. Y., 436, 50 L. R. A., 836, 74 Am. St. R., 859.

In the case of Wills v. Babb, 220 Ill., 95, 6 L. R. A. (N. S.), 136, will be found a large number of cases collected and cited by the

annotator bearing upon this subject. Among the number are the cases of Whilhelm v. Burleyson, 106 N. C., 381, 11 S. E., 590, and Harding v. Whitney, 40 Ind., 379. In the Wilhelm case the plaintiff sued for damages for erecting a dam upon the bank of the creek so that the water overflowed the plaintiff's land'. It appeared that the plaintiff had previously erected a dam, which necessitated the defendant to erect one for his own protection. It was said in that case: ''The plaintiff first built a wall on his side of the creek, and thereby caused the water to overflow the defendant's land on the other side and lower down. The defendant had a right to build a dam on the north bank to stop the overflow brought about in that way, and if, in effecting that object, it became necessary to obstruct the flow of water in the creek and cause it to eddy so as in freshets to flood more of plaintiff's land than had previously been covered in freshets, the defendant was not answerable in damages for such additional overflow.''

In the Harding case the plaintiff charged that the defendant had obstructed a stream of water and caused it to flow over the lands of the plaintiff adjoining. The defendant answered that the plaintiff had' previously diverted the water course to defendant's injury, and for his own protection he had provided against its flowing over his land, and restored it to its natural channel. A demurrer was filed to the answer and overruled. It was held·there was no error in the ruling of the trial court upon the demurrer. These cases are more or less in point when considered in connection with the fact that under the general rule as stated in Mathison v. Hoffman, supra, and the notes thereon in 6 L. R. A., 349, and' as announced by Mr. Thompson in his valuable work on Real Property, Vol. 1, 605, to the effect that one who has taken the water from its original natural flow, and has continued to divert it for a period of twenty years or more, cannot afterward be permitted to restore it to its original state when it will have the effect of injuring the property over which it formerly flowed.

Applying this general rule to the facts of this case, with reference to the construction of this old levee and ditch by Finch, Sr., and continued by the complainant, the present owner, for a period of more than twenty years, and by which the water was diverted from its original natural flow and conveyed' by the ditch and levee along the north side of complainant's land under the bridge and into the creek on the east side of the road, fixed a mutual and reciprocal right by prescription to have the water continue to flow as it did at the time the complainant plowed down and destroyed the old levee. The defendant had acquired the prescriptive right to have the levee and ditch maintained, and the water continue to flow to the east since this diversion of the water had' continued for a period of twenty years

or more. In the meantime the defendants had purchased their land and had erected thereon their dwelling houses on the assumption that the condition would remain with reference to the flow of the water as at the time they purchased their land. The destruction of this dike by complainant operated to deprive the defendants of the protection and benefit of the dike and the prescriptive right they had acquired to have it maintained. This right having already accrued to the defendants by prescription, we are of the opinion that they were clearly within their rights in repairing or rebuilding the levee on their own land necessary to protect them, and to preserve the prescriptive right they had already acquired to have the water continue to flow as it had been artificially made to flow for a period of more than twenty years. The act of the complainant in plowing down this old levee had the effect to again change the flow of the water to its original natural course, and to the injury and detriment of the defendants.

We are therefore of the opinion that having acquired this right by prescription, the defendants were clearly within their rights in repairing and maintaining their levee so as to protect and preserve the prescriptive right they had already acquired, and would, in fact, have been within their rights to have erected a new levee if necessary to protect their lands from the overflow occasioned by the act of complainant in plowing down or otherwise destroying the old dike built by the father of complainant and maintained by the complainant for more than twenty years.

We are of the opinion that the learned Chancellor was in error in sustaining complainant's bill and making perpetual the injunction against the defendants in rebuilding and maintaining their levee, and in decreeing that said levee should be removed by the defendants.

The decree of the Chancellor is reversed and the bill dismissed and the injunction dissolved. The complainant, appellee, will pay the costs of the cause including the cost of this appeal.

Owen and Heiskell, JJ., concur.