HENNING JOHNK ET AL., APPELLEES, v. UNION PACIFIC RAILROAD COMPANY, APPELLANT.

FILED APRIL 29, 1916. No. 18860.

Waters: STREAMS: FORMATION OF NEW CHANNELS: RIGHT OF RESTORATION. A riparian owner may restore to its former channel a stream which erosion has caused to flow in a new channel upon his land, providing he does so within a reasonable time after the new channel formed and before the interests of lower riparian proprietors along the course of the old channel would be injuriously affected by such action on his part, as, for instance, where they have con-

structed roadways across the former channel, have erected wind-mills and pumps in order to replace the water of which they were deprived by the diversion, and where the old channel has become shallow by the deposit of silt, the growth of vegetation, and other means.

APPEAL from the district court for Colfax county: CONRAD HOLLENBECK, JUDGE. *Affirmed.*

*Edson Rich,* for appellant.

*Cain & Mapes,* contra.

LETTON, J.

This was an action in equity to restrain the defendants from ˙restoring the waters of a natural watercourse, known as Shell creek, to their former channel. The flow had become diverted so as to abandon the natural channel, and by means of a ditch, known as the Bailey ditch, reached another ditch parallel to the line of the Union Pacific Railroad Company and close to its track. Shell creek rises in Boone county and flows in a southeasterly direction into the Platte river. For a distance of almost six or seven miles it flows almost parallel to the track of the railroad company. At one point in its course where it flowed though the land of the defendants Bailey its banks were low. When in flood the excess waters of the stream flowed southwardly through the Bailey ditch into the railroad ditch. This had been dug by the railroad company parallel and close to its right of way from where it received the water from the Bailey ditch to a point several miles to the east, where the accumulated waters passed under the railroad track through a bridge, and thence to the river. The railroad ditch being of greater depth at the point where the flood waters of Shell creek flowed into it and the soil being easily eroded, a scarp or fall was formed in the Bailey ditch, which in the course of years gradually worked backward to a point about 40 rods south of Shell creek. By the spring of 1908 this erosion had reached nearly to a bridge which had been erected over the Bailey ditch near the creek. Several witnesses testify

that by reason of heavy rains early in 1908 erosion proceeded much more rapidly, until at last there were only a few yards of clay or hardpan forming a barrier between the normal flow of Shell creek and the bottom of the Bailey ditch. In that year during times of high water in the creek the waters flowed both in the channel of the creek and through the ditch. Finally the barrier was worn through and washed away and the entire flow of the creek was diverted through the ditch. The former channel became partially filled with silt deposited from flood waters; weeds and bushes grew up in it and decayed; farmers along its course made earthen road crossings over it, and some of them were compelled to erect windmills and pumps to provide water for their live stock. The surface of the stream in the new bed at the point of diversion is now about six feet lower than the bed of the old channel. In 1912 or 1913 the railroad company, believing that the flow of the water in the ditch near their track was endangering their property, decided, with the consent of the owners of the land at the point of diversion, to build a dam at the head of the ditch and thus restore the waters to their former channel. The plaintiffs, who are owners of farms through which the former channel extends, insist that the stream changed its flow from natural causes; that the changed condition has existed many years; that the ancient channel below the head of the ditch is now insufficient to carry the waters of the creek; and that if the waters are diverted into the old channel they will overflow and inundate several hundred acres of their land and will injure and destroy their crops. They also assert that, by reason of the gradual change of the channel, the stream flowing through the ditch has become a natural watercourse; that they have changed their situation relying upon the present conditions; that defendants acquiesced in the new conditions, and now have no right to interfere with the present flow. Defendants contend that they have ten full years within which to restore the normal flow of Shell creek to its original channel. The dis-

trict court found for the plaintiff and granted a perpetual injunction. Defendants appeal.

The evidence is clear that, though the flood waters of Shell creek flowed down the Bailey ditch for many years, the ordinary flow did not enter into the ditch until in 1908. In April, 1909, a letter was written by one French, a farmer owning lands through which the railroad ditch passed, calling the attention of the railroad company, through its engineer, to the fact that all the water in Shell creek had been diverted through the Bailey ditch the previous year, had been flowing through the ditch all winter, that the creek was filling up, and suggesting the results liable to follow. A representative of the railroad company went with Mr. French to view the point of diversion. At that time some water was flowing in both channels, but soon afterwards it was only during times of excessive floods that water flowed in the old creek bed. The evidence seems to establish the fact that the change in the channel was quite gradual; first the flood waters only followed the new course, then as the clay barrier wore away the normal flow divided, part running in each channel, and finally a complete diversion took place. The ditch then became a natural watercourse, and so continued when the trial was had. *Pyle v. Richards,* 17 Neb. 180; *Town v. Missouri P. R. Co.,* 50 Neb. 768; *Gray v. Chicago, St. P., M. & O. R. Co.,* 90 Neb. 795; *Wholey v. Caldwell,* 108 Cal. 95, 30 L. R. A. 820.

If the defendants had erected a barrier to prevent the natural and normal flow of the stream from following the new channel, within a reasonable time, they would have had that right.

The crucial question is whether, after having stood by with knowledge of the conditions from the spring of 1909 until the latter part of July, 1912, when the conditions had materially changed, defendants may still put in a dam and return the waters to their former bed. In most of the cases involving the right to restore a stream to its former channel over the protest of the former riparian own-

ers, a much longer time had interposed than in this case. In a number the period was more than ten years, which was the statutory period of limitation. In such case the court held that the former proprietors had become entitled to hold their land free of being servient to the flow of the water in its natural channel. *Smith v. Musgrove,* 32 Mo. App. 241; *Kray. v. Muggli,* 84 Minn. 90; 1 Wiel, Water Rights (3d ed.) sec. 60. In some cases, though 10 years had elapsed, the statute of limitations was not applicable, since in the state where the question arose the period of prescription was 15 years. In such cases the question was considered to be somewhat of the nature of one pertaining to the dedication of a highway, and it was held that if the conduct of the owner of the land where the stream now ran was such as to show an intention on his part that it should continue to run in the new course, and former riparian proprietors had accepted the new conditions, acted accordingly, and their interests would be injuriously affected by a change, the owner could not restore the stream to its former channel against their protest and without their consent.

In Vermont the statute of limitations is 15 years, but the court, in a case where a stream was suddenly changed by a flood so as to form a new channel and thus flowed for ten years, held that, on account of acquiescence in the running of the stream in the new channel and in the creation of new interests, the defendant would not be permitted to return the stream to the former channel. *Woodbury v. Short,* 17 Vt. 387. In *Ford v. Whitlock,* 27 Vt. 265, it is held that, if the diversion affects other proprietors unfavorably, it requires 15 years to give the right to keep the stream in the new channel. This is owing to the fact that their right of action does not lapse for that period, but, if it affects them favorably, the rule is the same as applies to a dedication of a road. "Any term is sufficient which satisfies the jury that the public was justified in treating it as a permanent dedication."

Washburn, Easements and Servitudes (4th ed.) *315, says: "In these and like cases, where one, who owns a watercourse in which another is interested, or by the use of which another is affected, does or suffers acts to be done affecting the rights of other proprietors, whereby a state of things is created which he cannot change without materially injuring another who has been led to act by what he himself had done or permitted, the courts often apply the doctrine of estoppel, and equity, and sometimes law, will interpose to prevent his causing such change to be made." See, also, 40 Cyc. 609, note 55.

*Yazoo & M. V. R. Co. v. Brown*, 99 Miss. 88, 33 L. R. A. n. s. 804, is not in conflict with this holding. In that case the water of the creek left the old channel in the spring of 1908 and flowed into the ditch of the railroad company. The same year the railroad company attempted to divert the water back into the old channel by building dams, which were washed away. In 1909, by driving piling, a dam was finally constructed which forced the water back. The action was brought by the owner of the land below the point of diversion to recover damages incurred by the construction of the latter dam and the return of the water to the ancient channel. The court held that plaintiff had no cause of action. This would have been the conclusion of this court under the same circumstances, since the defendant acted promptly and no rights had intervened.

The case of *Roe v. Howard County*, 75 Neb. 448, is in accordance with the doctrine of the Vermont court in holding that an easement by prescription against persons unfavorably affected can be acquired only by an adverse user for ten years. This does not aid defendants' contention. Had defendants taken steps to restore the stream to its former channel promptly, before the former channel had been obstructed by silt and vegetation, and before plaintiffs had incurred expense in supplying their want of water by artificial means, there is no doubt they would have had the right to do so, but we think their acquies-

cence and the changed conditions warrant the relief granted plaintiff by the district court.

AFFIRMED.

SEDGWICK, J., not sitting.