FRED WHIPPLE, APPELLANT, v. EDMUND NELSON, APPELLEE.
9 N. W. (2d) 288

FILED APRIL 23, 1943. No. 31551.

F. J. Schroeder and Perry, Van Pelt & Marti, for appellant.

Butler, James & Morrison, contra.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

MESSMORE, J.

The plaintiff instituted this equity action for the purpose of having the court determine the location of the old bed of Medicine creek across the lands of plaintiff and defendant, as the same existed from the years 1923 to 1935, and that the plaintiff and the defendant be ordered to open the same across their respective lands, to permit the waters from Clifford canyon and waters carried by the old channel of

Medicine creek to be carried across the lands of plaintiff and defendant in the watercourse in the same manner and direction that the same were carried until 1935.

The plaintiff is the owner and in possession of the east half of the southeast quarter of section 18, and the west half of the southwest quarter of section 17, all in township 7 north, range 27, Frontier county, Nebraska. The defendant is, and has been since 1926, the owner and in possession of the east half of the southwest quarter of section 17, township 7 north, range 27. The lands of both plaintiff and defendant lie in the Medicine creek valley, defendant's land being immediately to the east of plaintiff's land and downstream therefrom. Flowing across the lands of plaintiff and defendant since the earliest times has been a creek, known as Medicine creek. In 1921 there was constructed across the lands of the plaintiff and defendant a drainage ditch, by agreement between plaintiff and the defendant's predecessor in title.

The amended petition alleges, in substance, that to the north and west of the plaintiff's land there commences a natural depression and watercourse, known as Clifford canyon, the water flowing into Medicine creek at a point near the south boundary of said land; that there is a continual slope of the land from the point where such canyon commences to the point where it meets Medicine creek on plaintiff's land; that the only water passing through this canyon is from rains and melting snows, the canyon constituting the natural and usual channel by which such waters were carried into Medicine creek; that, following the construction of the drainage ditch in 1921, the waters of Clifford canyon continued to flow easterly into the old channel of Medicine creek, across the plaintiff's and defendant's lands.

On April 18, 1923, in an action by the plaintiff and wife against defendant's predecessor in title and his brother, both Medicine creek and Clifford canyon were held to be natural watercourses. The amended petition further alleges that since 1932 the defendant has been farming the old

bed of Medicine creek and has not kept it cleaned out across his land, whereby it would serve to drain the same amount of water from Clifford canyon as was brought to the land of defendant by the old bed of Medicine creek; that by reason thereof Medicine creek became partially filled; alleges that until 1935 the waters of Clifford canyon continued to drain and flow through the old abandoned channel of Medicine creek and continued to be a watercourse within the contemplation of law, notwithstanding the fact that the defendant farmed over the old bed of Medicine creek at times during such period; that in 1935 the lands of plaintiff and defendant were flooded by the waters of Medicine Creek, whereby the flood waters remained on said lands for several, hours, causing silt and dirt to settle on said lands, and filling the old channel of Medicine creek so that there was no channel on the land of either the plaintiff or defendant which had previously existed to carry away the waters of Clifford canyon; that because of the filling up of the old channel by the flood waters in 1935 the plaintiff advised the defendant that he proposed to construct a ditch to carry the waters of Clifford canyon across the plaintiff's land in the same general easterly direction that it was formerly carried in the old channel of Medicine creek and onto the land of the defendant at the approximate location of the old channel of the creek; that the defendant made no objection thereto. The plaintiff did construct a ditch, and in 1936 in litigation between defendant and plaintiff a decree, filed of record April 15, 1939, enjoined the plaintiff from maintaining the ditch as then located. Plaintiff subsequently filled in the ditch. The amended petition further alleges that plaintiff has never abandoned his right to have the old creek bed opened across his land and defendant's land.

The answer alleges that the change of the course of Medicine creek in 1921 was brought about between plaintiff and Frank Murray, defendant's predecessor in title, pursuant to the agreement, a new channel was made, and immediately after the completion of the ditch in 1921 the old channel commenced to gradually fill up; that defendant since 1926

has farmed across the old creek bed, which was abandoned in 1921, and the plaintiff since 1925, the latter hauling fodder, cane and rocks to fill it up; that defendant relied on the agreement and abandonment. The reply is a general denial.

The record discloses that prior to 1921 Medicine creek flowed through the lands of plaintiff and defendant and the southwest quarter of land owned by one Seibold, lying east of defendant's land, forming a meandering horseshoe on the lands of plaintiff and defendant which reached down to within a short distance of the outlet of Clifford canyon and the ravines adjacent thereto on the east. By the agreement in 1921 the new drainage ditch was constructed across the top of the horseshoe, starting in the northwest part of the plaintiff's land, running southeast into defendant's land, and joining with Medicine creek before it passed from defendant's land, to the Seibold land through a bridge located on the section-line between the lands of defendant and Seibold. The canyon is a natural depression north and east of the plaintiff's land, which flowed into Medicine creek at a point near the south boundary line of plaintiff's land. This canyon drained rain and melting snows which were carried into Medicine creek at this point and thence into the old bed of the creek where it intersected the old creek. Thereafter, the old bed of Medicine creek gradually began to fill up with silt and débris, first down near the bridge, mentioned above, so that the waters from Clifford canyon could no longer flow into Medicine creek, as previously.

The defendant moved on his land in 1926. He testified that at that time he observed the contours of an old watercourse in places on his land. At the west end it was quite deep, probably six or seven feet, through the center of the field a foot and a half deep, and deeper at the lower end; that probably one-fourth of the bed might have had some water in it, "the rest of it dry, and there was a few places where you could walk across on a ridge." In 1926 he listed across a corner of what he had been informed was part of a creek bed; he observed circles or half-moons, but could

not tell where the old creek bed was located. In 1927 he farmed across most of the old creek bed, and during that year there were two floods that filled up a considerable portion of it by washing soil across it. He continued to farm across the creek bed from 1927 to 1930, and each year, when there was a flood, "there would be quite a bit more of it fill up." Defendant testified he saw crops planted across the old bed on plaintiff's land in 1931 and 1932. In 1933 an employee of the plaintiff hauled two or three loads of rock, dumping them in the old creek bed. In 1935, referred to as the year of the big flood, the plaintiff filled in some holes and leveled off the ground on the old creek bed, to enable him to farm across it.

The action is one to compel the restoration of what the plaintiff claims to be a natural watercourse. Additional evidence, relied on by plaintiff to establish his contention, briefly summarized is as follows: The testimony of the witness Sorensen, who resided on the Barry, now the Seibold, place for three years, beginning with the spring of 1930, was to the effect that the defendant had farmed over only a part of the creek bed, and that 15 or 20 rods of the old channel were open; that "there was running water down through that ditch all the time" until 1930 when it filled up to such an extent that the water would not run down the channel; in that year, from an examination of the ground, he could tell where the old creek bed ran the entire length of the defendant's land; he observed that it was farmed over and filled up in places.

Plaintiff's witness Nielsen, who lived on the Barry place in the spring of 1933, testified that a part of the channel was farmed and that the part nearest to the plaintiff's land, which he estimated to be 15 to 25 rods was not farmed; that the part farmed was up toward the road on the east side, and that the old creek bed varied in depth from two to four feet. The plaintiff called attention to the testimony of defendant that in 1926 the old Medicine creek bed was visible at the west end of his land, being six or seven feet deep, but not quite so deep on the plaintiff's land, and

that it continued at that depth on the defendant's land to the middle thereof.

Defendant's witness Evans observed the old creek bed across the plaintiff's land in 1933; it varied in depth and in some places was more than a foot and in some two feet or more, and he could see the markings of the old bed on the defendant's land. Alva Nelson testified that in 1928 there were 150 to 200 yards of the old creek bed visible on defendant's land, and as late as 1934 on the west end of that land it was visible in a space from 50 to 75 feet in length and 20 to 30 feet in width.

The county surveyor testified that it would not be possible for him to ascertain the old course of Medicine creek; that he was sure the old bed was filled up over a period of years; that he had passed over it frequently but could not see whether it had been filled up in other ways, mechanically, but knew the wash had been largely responsible. In rebuttal, plaintiff's witness testified he had cut timber on the south side of plaintiff's land in September, 1934; that there were no crops planted in the old channel bed; that there was a crop close to it; that the old channel was two or three feet deep and about six to ten feet wide.

On the foregoing evidence, the court dismissed the plaintiff's amended petition. Motion for a new trial was overruled, and plaintiff appealed, assigning as error the dismissal of plaintiff's petition; the finding of the court that since 1923 the original Medicine creek channel had been abandoned as a natural watercourse of the waters of both Medicine creek and Clifford canyon, and in finding that no apparent effort had been made since 1923 by the parties to the suit to keep the original channel open for any purpose.

"It is generally held that a riparian owner may restore to its former channel a stream which has formed a new channel upon his land, providing he does so within a reasonable time after the new channel is formed, and before the interests of lower riparian proprietors along the course of the old channel would be injuriously affected by such action on his part." 27 R. C. L. 1096, sec. 33; citing *Johnk*

*v. Union P. R. Co.,* 99 Neb. 763, 157 N. W. 918. "The time within which a stream may be restored to its original channel does not depend upon a statute of limitations but upon whether the public have acted with justification on the belief that the change was to be permanent, and have made changes in their property in reliance on that belief." 27 R. C. L. 1096, sec. 33. See *Johnk v. Union P. R. Co., supra; Woodbury v. Short,* 17 Vt. 387, 44 Am. Dec. 344, cited in the *Johnk* case; *Cloyes v. Middlebury Electric Co.,* 80 Vt. 109, 66 Atl. 1039.

We conclude that the instant case is governed by the reasoning and law announced in *Johnk v. Union P. R. Co., supra.* That action was one in equity, to restrain defendants from restoring waters from a natural watercourse, known as Shell creek, to their former channel. The flow had become diverted so as to abandon the natural channel, and, by means of a ditch known as the Bailey ditch, reached another ditch parallel to the line of defendant's track. The stream had gradually changed its course, and the former channel became filled, causing the owners along the stream to construct roadways across the former channel, and to install other means for procuring a water supply. The owner at point of diversion had acquiesced in the change for a considerable length of time, and it was said that he was not privileged to restore the stream to the old channel, although he could have done so if he had acted within a reasonable time after the new channel formed and before the interests of the lower riparian proprietors would have been injuriously affected by such restoration. The time element was from the spring of 1909 until the latter part of July, 1912. The above case cited *Woodbury v. Short, supra.* The statute of limitations in Vermont is 15 years. However, the Vermont court held:

"Where the course of a stream, running across the land of the defendant to the plaintiff's land, was changed by a sudden and unusual flood, so as to run upon the defendant's land without passing over the plaintiff's land, and the defendant permitted the water to run in the new channel, thus

formed, for ten years, it was held that he was bound by his acquiescence, and that he had no right, after such lapse of time, to obstruct the stream upon his own land, so as to divert it from the new channel into the channel in which it had formerly passed across the plaintiff's land."

In *Cloyes v. Middlebury Electric Co., supra,* the court held: "Where an artificial channel is substituted for the natural channel of a stream, or created in such circumstances as indicate that it is designed to be permanent, riparian rights may attach to it; and where such change is made by mutual action of the riparian owners, their rights and duties in respect of the artificial channel will be the same as if it were the natural one."

While the factual situation in the cited cases is necessarily different, we conclude that the facts in the instant case are much stronger than those presented in the case of *Johnk v. Union P. R. Co., supra,* or in any of the cases cited. In the instant case, the agreement between the plaintiff and defendant's predecessor in title, wherein the channel of the stream was changed, was a voluntary agreement, and since the litigation between them in 1923 nothing further was done by the plaintiff with reference to restoring the stream to its old channel, except that in 1936 plaintiff attempted to dig a ditch across his land, to carry the water, as he contended, into its natural course. This resulted in litigation between plaintiff and defendant in 1939. From 1926 or 1927 the defendant farmed across the old creek bed, which had gradually filled with silt, débris and vegetation, and the plaintiff hauled rocks and dumped them into the old creek bed, to fill it up, and leveled off the ground, to enable him to farm across it in 1935, and he has continued to farm across it.

The evidence clearly indicates that since 1923 the original Medicine creek channel had been abandoned as a natural watercourse of the waters of both Medicine creek and Clifford canyon, and no apparent effort has been made since that time by the parties to keep the original channel open for any purpose. The circumstances are such as to show

an intent by the adjoining landowners that the new channel is the course of the stream, and the parties have so accepted this condition and acted accordingly. Under such circumstances the stream cannot be restored to its former channel against the protest and without the consent of the landowner over whose land the old channel ran, and where the plaintiff, who seeks to restore the old channel, has acquiesced in such condition and stood by for a period of 13 years or more.

The trial court made an inspection of the premises, based its findings thereon, and concluded that the old channel of Medicine creek had been abandoned. Such findings are entitled to great weight with a reviewing court. *Independent Stock Farm v. Stevens,* 128 Neb. 619, 259 N. W. 647.

For the reasons given, the judgment of the trial court is affirmed.

AFFIRMED.