GERTRUDE SHEPARDSON ET AL., APPELLEES, V. CHICAGO,
BURLINGTON & QUINCY RAILROAD COMPANY, A
CORPORATION, APPELLANT.

69 N. W. 2d 376

Filed March 25, 1955. No. 33573.

*Mark J. Ryan, William G. Ashford, J. W. Weingarten,*
and *Walter P. Loomis,* for appellant.

*Sherman W. McKinley* and *Sifford & Wadden,* for
appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE,
YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Appellees seek an injunction to compel appellant to
restore the waters of Omaha Creek to their natural
flow; to prevent appellants from interfering with the

natural flow of waters of Omaha Creek; and to recover damages from appellant alleged to have been caused to the property of appellees by the interference of appellant with the natural flow of waters of the creek. The district court found the facts in favor of appellees, decreed them the relief they sought, and denied the motion of appellant for a new trial. This appeal challenges the correctness of the findings and judgment.

The cause of action alleged by appellees is as follows: Appellees are the owners as joint tenants of Lots 1 to 6, inclusive, of Block 1, Smith's Addition to Homer, subject to an exception not material to this litigation, upon which are a dwelling house and other structures. Appellant constructed a railroad at its present location along the east bank of Omaha Creek and it maintains and operates it. Appellant constructed a rock riprap upon the east bank and into the bed of Omaha Creek between its railroad and the creek, placed rock at the base thereof, and has maintained it, except it has permitted rock to fall therefrom into the bed of the creek along the base of the riprap. It is opposite the premises of appellees which now abut upon the western bank of Omaha Creek. The riprap as constructed caused the natural course of the waters of Omaha Creek to change so that they were thrown against the western bank thereof, and they cut away the bank until in 1951 the waters cut in and upon the premises of appellees and they will continue to do so unless they are arrested and controlled. Appellant has been negligent in the construction and operation of the riprap in the following matters: It has failed to use ordinary care in its construction to prevent the waters of Omaha Creek from changing their natural course and cutting in and upon the premises of appellees; it has constructed the riprap without regard to the effect of its construction upon the waters of Omaha Creek; it has diverted the waters of Omaha Creek from their natural flow by such construc-

tion in and upon the premises of appellees; it has failed to use the engineering skill and knowledge ordinarily practiced at the time in the construction of the riprap because it failed to erect it within the boundary of the natural bank of Omaha Creek which it replaced and thereby maintain the natural course of the waters therein; it failed to use ordinary engineering skill and knowledge in that it did not put the riprap within the natural bank it replaced, but did replace the earthen bank with an impervious stone wall and extended the riprap into the bed of the stream and did not maintain the natural course of Omaha Creek; and appellant has not used ordinary care to maintain the riprap but has permitted rock and stone to accumulate at the base thereof and in the bed of the stream. The property of appellees has been damaged in a definite stated amount.

Appellant by its answer denied all matters asserted by appellees except it admitted it owns, maintains, and operates a line of railroad through Homer on the east side of Omaha Creek in the vicinity of the premises described in the petition of appellees. Appellant alleged that the drainage of Omaha Creek upstream, south and southwest of the premises of appellees, was about 117 square miles from which there was rapid run-off after storms; that the channel of the creek frequently overflowed; that the property of appellees on the west bank of the creek was in the flood plane of the stream subject to overflow, and was in the Omadi Drainage District of Dakota County, which was organized about the year 1925; that it constructed and improved an outlet for Omaha Creek between Homer and the Missouri River; that since then the creek had deepened its channel along and in the vicinity of the property of appellees; that the deepening of the channel, the ground water, and wet seasons have made the banks of the stream unstable so that they cave, slide, and break off in Homer and the vicinity thereof; that thereby encroachment of

the creek on adjacent property has resulted; that the injury of which appellees complain resulted directly therefrom; that in 1945 part of the east bank of Omaha Creek adjacent to the railroad of appellant extending from about a point opposite the north line of the property of appellees slipped off into the stream channel because of its deepening; that additional portions of the bank would have broken off if the bank had not been supported and protected; that appellant to prevent further destruction of the bank due to undermining and loss of its track replaced the bank of the creek with rock or stone riprap; that it increased the capacity for passage of waters of the stream; that the riprap does not deflect or interfere with the course or direction of the waters of the stream; that it was downstream from the property of appellees; and it has not caused any injury or damage to the property of appellees.

Appellees denied the new matter in the answer.

The petition of appellees definitely and explicitly complains of only two things as a basis of relief, the construction of the riprap by appellant on the east side of Omaha Creek in 1946 adjacent to its railroad track, and the maintenance of it thereafter. There is no allegation of or any reference to any other construction, stone, rock, act, or default of appellant. The grant of any relief to appellees depends upon proof that the riprap was improperly constructed or that it has not been properly maintained or both improper construction and maintenance, and if either or both are established then proof of damage caused thereby and the amount of the damage. The only cause of action presented in this litigation is that definite and precise. As early as Chicago, B. & Q. R. R. Co. v. Grablin, 38 Neb. 90, 56 N. W. 796, the court said: "The rule everywhere is that the pleadings and proof must agree. * * * The neglect or failure of the engineer to keep a proper lookout ahead is not alleged in the petition as one of these acts or omissions

of negligence. * * * The admission then of the evidence tending to show that the engineer could, by the exercise of a careful and vigilant lookout, have seen the boy in time to have saved him, was error." The constancy of this rule of practice in this jurisdiction is indicated by the repetition of it as late as Benson v. Walker, 157 Neb. 436, 59 N. W. 2d 739, in these words: "The rule of law is inflexible that the allegations and the proof * * * must agree."

The burden was with appellees to prove by competent and relevant evidence the cause of action as alleged. Gering Irrigation Dist. v. Mitchell Irrigation Dist., 141 Neb. 344, 3 N. W. 2d 566, states the rule: "* * * one who seeks an injunction must establish by competent evidence every controverted fact necessary to entitle him to relief, and that injunction will not lie unless the right is clear, the damage irreparable and the remedy at law is inadequate to prevent failure of justice." See, also, Faught v. Platte Valley Public Power & Irr. Dist., 147 Neb. 1032, 25 N. W. 2d 889; Hanson v. City of Omaha, 157 Neb. 403, 59 N. W. 2d 622.

This case was permitted over proper objections to take a wide range and there is much incompetent and irrelevant evidence foreign to anything involved in the case as made by the pleadings. Appellant has assigned error and contends that the trial court was prejudicially wrong in admitting over objections this character of evidence. This is an equity case. It is for trial in this court de novo upon the record. The presumption is that the trial court in deciding the case considered only evidence that was competent and relevant to the issues made by the pleadings, that is, that the trial court wholly excluded for all purposes the evidence that was not of that character. An equity case will not be reversed and the cause remanded to the district court because improper evidence was admitted on the trial of the case. Rohn v. Kelley, 156 Neb. 463, 56 N. W. 2d 711. The

litigant who offers incompetent and irrelevant evidence in the trial of a case, which is admitted over proper objection of the adverse party, may not have any benefit or advantage because of its reception. This court disregards such evidence in the trial de novo of a case.

The manner of the consideration of an equity case in this court has often been stated. It is the duty of the court to try the cause de novo upon the record, and to reach an independent conclusion not influenced by what was done in the trial court except to the extent that there is irreconcilable conflict in the evidence and as to it the court may consider that the trial court saw the witnesses and accepted one version of the facts. Likewise this court will give proper consideration to the fact that the trial court inspected the premises and that its examination constituted evidence because the facts observed necessarily affected the mind of the trial court and tended to induce belief or unbelief on the matters at issue in the case, if there is other competent evidence in the record to sustain the findings. Keim v. Downing, 157 Neb. 481, 59 N. W. 2d 602.

The property of appellees in the town of Homer involved in this litigation is south of James Street, east of First Street, north of Joseph Street, and the principal part of it is adjacent to and west of the west right-of-way line of appellant. The south part of the property is in Omaha Creek, hereafter referred to as the creek. The creek crosses the property from the southwest and curves slightly to the west opposite the property and proceeds in a northeasterly direction through and beyond Homer. The railroad line of appellant is near the top line of the east bank of the creek and nearly parallel with it from the south half of the property of the appellees extending northeasterly through Homer.

A copy of a part of a drawing received in evidence is inserted here. The part shown is Joseph Street to John Street.

The drawing shows the property of appellees and the streets in Homer above named. John Street in the town is 1 block north of the property of appellees and the bridge across the creek is located therein. First Street extends north and south. The boundaries of the right-of-way of appellant are indicated by lines consisting of long dash lines with two dots between the dashes. The track of appellant is represented by a heavy continuous line along which are numerals indicating station locations. The channel of the creek is identified by un-broken lines along each of which appears "Bank line 7-23-52." The riprap on the east bank of the creek is represented by the shaded portion about the center of which is the word "Riprap." The shaded portions ex-tending from the base of the riprap represent rock. The two shaded areas near which is the word "Rocks" show the location of some rock in the bed of the stream.

The principal part of what is known as Omaha Creek originates about one-half mile north of the town of Rosalie. There are other drains from the south of Homer that converge with Omaha Creek. The area drained above Homer by the creek is in excess of 170 square miles. The flow of water in the creek is to the north-east and it empties into the Missouri River. The area of Homer inclusive of the property of appellees is in the flood plane of the creek. This entire territory was in-undated by floods in 1920 and in 1940. A part of the town of Homer is within an organized drainage district known as the Omadi Drainage District. Appellees are within it and they have paid assessments made by the district for benefits. The district was improved in 1925 by the construction of an outlet for the creek from north of Homer to the Missouri River. It consisted of a pilot ditch, 20 feet wide at the bottom and 10 to 17 feet deep, from the original channel of the creek one-half mile north of Homer due east about 2 miles to the Missouri River. The channel of the creek prior to that construction ex-tended irregularly northerly and northwesterly on the

west side of the railroad about 1½ miles, turned east, passed under the right-of-way of the railroad, and continued to the river. The ditch constructed by the district had a subgrade or a V-shaped bottom 2 feet below where the ditch was 20 feet wide. This design was used so the water passing through the ditch would scour, widen, and deepen it. The ditch had a fall of 8 feet to the mile. The intended result was realized and the channel of the creek became deeper and wider from the east to the railroad and into and upstream through Homer and beyond. As the channel of the creek became deeper it became wider. The channel 1 block north of the property of appellees deepened 8.2 feet from June 1921 to May 1953, and in the period of September 1932, the first measurement made after the new outlet was constructed, until May 1953, it had deepened 8.7 feet. Since the riprap was placed on the east bank of the channel in the year 1946 the channel has become in that location materially deeper. The proof is that when a channel of the kind and in the situation of this creek becomes deeper the banks crack at the top and slide downward; that the widening of the channel is the result of it becoming deeper; that this process produces vertical banks which sooner or later slough off and cause a recession in the banks; and that Omaha Creek has become deeper and this has caused the banks to recede and widen the channel upstream through and beyond Homer.

The occasion of the placing of riprap on the east bank of the creek was a cave or slide of the bank in 1945 for a distance of about 150 feet, about 75 feet on either side of the center of the riprap, measuring from north to south, that is, the south end of the cave-in was about 225 feet north of the south end of the riprap. The bank at the top receded eastward to and in some places beyond the west end of the ties of the railroad track. The track was made unsafe and unusable and it was moved to the east until the condition created by the

failure of the bank could be repaired. The bank of the creek evidenced further probable break in it and as a temporary support appellant dumped stone along and against the bank. Later this stone was all removed and the dirt that had moved down in the channel of the creek was taken out, and it and the stone were placed east of the track. The bank where the riprap was placed was graded to a slope from the bottom to the top of "one and a half to one." A trench was excavated at the toe of the bank 4 feet deep and filled with rock as a base for the riprap, and rock was laid by hand on the slope of the bank to a depth of 30 inches. The construction was done so that it did not diminish the water-carrying capacity of the channel of the creek but it did enlarge it. The bank at the top was several feet farther east than it was before the bank caved. When the work was finished there were no rocks or any obstruction left in the channel of the creek by appellant. The riprap was completed and the track of appellant was moved back to its former location in October 1946. The proof is that the riprap was properly constructed with approved engineering skill and knowledge, and that it did not obstruct or change but it did facilitate the flow of the waters of the creek. The claims of appellees that the riprap was not placed within the boundary of the east bank of Omaha Creek which it replaced; that it extended into the bed of the stream; and that it changed or interfered with the flow of the waters of the creek were not established. There was a failure of proof of improper construction of the riprap.

Appellant was a riparian owner and in the circumstances of this case it was within its rights in making the construction it did to protect the railroad owned and operated by it. In Gulf, C. & S. F. Ry. Co. v. Clark, 101 F. 678, the court said: "A riparian owner upon a stream may construct necessary embankments, dikes, or other structures to maintain his bank of the stream in its original place and condition, or to restore it to

that condition, and to bring the stream back to its natural course, when it has encroached upon his land; and, if he does no more, other riparian owners cannot recover damages for the injury his action causes them." See, also, Sinclair Prairie Oil Co. v. Fleming, 203 Okl. 600, 225 P. 2d 348, 23 A. L. R. 2d 741; Pechacek v. Hightower, — Okl. —, 269 P. 2d 342; Johnk v. Union Pacific R. R. Co., 99 Neb. 763, 157 N. W. 918, L. R. A. 1916F 403; Whipple v. Nelson, 143 Neb. 286, 9 N. W. 2d 288; Stolting v. Everett, 155 Neb. 292, 51 N. W. 2d 603; Archer v. City of Los Angeles, 19 Cal. 2d 19, 119 P. 2d 1; Annotation, § 2, 23 A. L. R. 2d 756. The effect of the improvement made by appellant along the east bank of the channel in 1946 was to improve it and to influence water therein to flow in a direct downstream course. The use of riprap to support and protect an unstable bank of a stream is appropriate and if reasonably uniform creates a direct flow of the stream. It contributes to regularity of the flow as opposed to a turbulent condition which pertains to irregularity in the channel when the water is above low-water stages. The riprap in this instance reduced cutting in the bed and banks of the stream. The riprap was constructed in a proper manner and with engineering skill.

Appellees claim that appellant has been negligent in the maintenance of the riprap because it has permitted rock to fall therefrom, to accumulate at the base of the riprap and in the bed of the stream, and that thereby the waters of the creek have been thrown against the western bank and cut in and upon the premises of appellees. The riprap wall is in the location where it was constructed. It has not settled or in any other manner moved into or interfered with the channel of the stream. The rocks along the base of the riprap and in the stream north from the south end of the riprap which are visible at low water in the channel, and the rock west of the south part of the riprap that inclines to the northwest and toward the west bank of the chan-

nel and that is also exposed to view when the water is low, are shown on the drawing exhibited above. The two places marked on the drawing "Rocks" are about 50 feet south of the south end of the riprap. This is upstream from the end of the riprap and there is no proof of any fact or condition that explains or from which it may reasonably be inferred that rock from the riprap could or that it did travel southerly upstream the distances the rocks are southwesterly from the nearest point of the riprap. There is evidence that this rock was not a part of that placed in the riprap in 1946.

Appellees complain primarily of the recession of the west bank of the channel westerly in two locations. The one farthest downstream is on the south part of the east end of Lot 2 but a part of it extends into the east end of Lot 3. The distance along the bank is estimated at about 70 feet. The other is on the east end of Lot 3 and a part of Lot 4 and is estimated to be about 50 feet along the bank of the channel. The rocks in the bed of the creek from near the south end of the riprap inclining to the northwest and identified on the drawing by the words "Rocks across channel" are substantially opposite the south line or the southeast corner of Lot 1, downstream from the damage to the west bank first above described, and a considerable distance downstream from the failure of the bank that affects Lots 3 and 4. The evidence is that when the water in the stream is not sufficient to cover the rocks therein no injury is done to either bank or to the bed of the stream. That is its usual condition, but during periods of run-off of water from the drainage area there is successive rising and falling of water within the channel of the creek. This contributes to the cutting and caving of the banks. When the water of the stream increases until it is sufficient to more than cover the rocks in the channel the course or flow of water therein is not controlled or influenced in any manner or to any extent by the presence of the rocks.

The greater part of the area drained by the creek is south and west of Homer. The wide part of the valley of the creek is on its west side through the town. The valley widens on the east side of the creek north of John Street which is 1 block north of the north line of the property of appellees. The west bank of the creek along the property of appellees about opposite the house thereon and at the south part of the property has been affected by seepage water. Water was observed coming out of the west bank of the creek at the south limits of Homer, a short time before the trial of this case in July 1954. Seepage was noticeable in January and June of the year before the trial and during the preceding year at the southwest corner of the intersection of Joseph and First Streets where there was erosion, bank caving, and slides. This was near the south part of the property of appellees. Seepage was present along the banks at John Street and about 1½ blocks north thereof. A witness testified he observed seepage in the west bank of the creek all along the property of appellees at times during the years 1950 to 1953, inclusive. The year 1951 was a wet year in the vicinity of Homer. It requires a considerable period for ground water to travel through the soil and to appear as seepage water along the bank of a watercourse. An engineer who was a witness for appellees and who examined the bank of the creek along the south part of the property of appellees shortly before he appeared at the trial when asked if the bank was wet from seepage stated: "When you see a wet bank like I looked at the other day, it is pretty difficult to separate that into seepage from ground water, or whatever you want to call it or where the facts are that you have a natural wetness around a stream, drawn there. * * *" He did not know of any high water in the creek that could have caused the bank to be wet.

The west bank of the creek across Lots 5 and 6 of the property of appellees has caved and receded to the west.

Trees along that location have slid off with the bank into the creek. The west bank line of the creek was in the intersection of First and Joseph Streets. A cement sidewalk along the west side of First Street and the south side of Joseph Street had intersected about a year before the trial but the bank eroded under the sidewalk and a part thereof had fallen in the creek at that intersection. The creek bank there is vertical for about 10 feet below the top and then slopes gradually down to the water line of the creek.

The south part of the property of appellees is on the inside of a slight curve in the creek. The west bank of the creek has receded to the west until the larger part of Lot 6 has been destroyed and a considerable part of Lots 4 and 5 has been lost. It is not claimed that there are any rocks or structures in the channel opposite, near to, or upstream from this erosion and damage to the west bank at that location.

The banks of the creek, both east and west, about 1½ blocks north of John Street have eroded, caved off, and washed away. There are no rocks or obstructions in the channel where that has occurred, but the banks there have been subject to seepage. There is no distinction between the erosion, sliding, or caving of the bank along the south part of the property of appellees and across Joseph Street, and that of the west bank along Lots 2, 3, and 4 of the property of appellees. The west bank line of the creek in that area had receded to the west about 10 feet before there was any riprap on the east bank, and that was before it is claimed there was a change in the course of the water in the creek at that place. This could not have been caused by the riprap or any rock therefrom. The character of the soil of the area involved is homogeneous. The banks are in alluvial formation such as there are in the entire vicinity. The banks are inherently unstable. Their instability has been intensified by seepage and the deepening of the channel. The evidence is convincing and it must be and is

concluded that the construction of the riprap by appellant in 1946, or the maintenance of it since, has not caused or contributed to the erosion or cave-in of the west bank of the creek along the property of appellees.

The judgment should be and it is reversed and the cause is remanded to the district court for Dakota County with directions to dismiss the case.

REVERSED AND REMANDED WITH DIRECTIONS.