MINNIE W. FIREBAUGH, APPELLEE, V. FRANK E. FIREBAUGH, APPELLANT.

77 N. W. 2d 891

Filed July 6, 1956. No. 33977.

*William S. Padley*, for appellant.

*Sam S. Diedrichs* and *Baskins & Baskins*, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This cause concerns proceedings instituted by appellee to modify a decree of divorce and to have an award of permanent alimony made to her. The relief was sought by petition filed in the divorce case less than 6 months after its trial and decision. The decree was rendered April 5, 1955. The petition to modify it was filed September 28, 1955.

Appellee was awarded an absolute divorce by decree of the district court of Lincoln County April 5, 1955. It provided that appellee should have as her property the household goods and furniture then in the home of the parties except the floor covering in the dining and living room. The floor covering and the tools and personal effects of appellant were assured to him as his property and he was adjudged to pay the costs of the action including $150 awarded appellee as compensation of her attorney in the case. The property given

appellee had a value of $20. The appellant by fraud and deception overreached and fraudulently persuaded appellee to accept an unfair and unjust settlement.

The parties were divorced by decree of court September 11, 1952. There was awarded thereby to appellee $1,261.17 and she received payment thereof September 19, 1952. Appellant induced appellee to place in his custody $1,141 of the amount she received by representation and promise that appellant would buy a designated property in North Platte, have it conveyed jointly to the parties to this cause, and they would thereafter resume a marital relationship. Appellant used the money appellee gave him to purchase the property and had the title thereto conveyed to his son by a prior marriage, in violation of his obligation and promise to appellee and with the purpose and intention of defrauding her. Appellee did not disclose the facts recited above during the litigation resulting in the decree of April 5, 1955, because of the repeated false and fraudulent representations, request, and assurance of appellant that she should not do so; that if she refrained from doing so he would recompense appellee for the amount involved by assisting her in getting into a business of her own; and that he caused her to believe by his conduct and statements that they would again live together as man and wife. She believed, relied, and acted upon the statements and inducements of appellant. Appellee asked that the decree of April 5, 1955, be modified and that she be awarded from appellant $1,141 with interest from the date she surrendered the money to appellant.

Appellant denied the charges made by appellee; and alleged that appellee waived alimony and division of property except as set forth in the decree of April 5, 1955; that he received no amount from her on September 19, 1952, or at any time; that he made no promise to appellee at any time incidental to the decree of April 5, 1955; that he was represented and acted only by his

counsel concerning all matters in that litigation; and that he did not promise to purchase property and place the title in the joint names of the parties.

The trial court found generally for appellee; that the allegations of the petition for modification of the decree of April 5, 1955, were true; that appellant received from appellee $1,141 on September 19, 1952, in the manner and for the purpose stated in the petition; that appellant practiced fraud upon appellee to induce and cause her not to mention to her counsel the facts concerning the money she furnished appellant; that he caused appellee to refrain from having that matter pleaded, investigated, and adjudicated in the cause decided by the decree; and that the decree of April 5, 1955, should be modified by inserting therein the requirement that appellant pay the appellee $1,141 with interest thereon at 6 percent per annum from September 20, 1952, or a total sum of $1,362 in addition to the requirements of the original decree. A decree was rendered in accordance with the findings. This appeal challenges the correctness of the findings and decree of the trial court.

The parties to this case were first married November 26, 1951, at Burley, Idaho. They were divorced by decree rendered September 11, 1952. They lived together again from about 3 weeks after the divorce decree until sometime in February 1954. They were married the second time in that month. The decree sought to be modified by the pending proceeding was rendered April 5, 1955, in an action commenced by appellee January 11, 1955.

The parties agree that the amount appellee received by the decree in the first divorce case was $1,261.17. This was paid to her September 19, 1952. The amount appellee gave appellant was $1,141. There are some general statements made from memory that do not wholly agree with these amounts but they are conceded by the parties to be correct and they were found by the trial court. Appellee gave the appellant money

because they planned to buy property. He was employed by the Union Pacific Railroad Company and was making $600 per month. He said he would buy a lot and a barracks building with the money she gave him. The parties talked with a real estate firm about buying a lot. They were taken to view a lot. They examined it and talked about how they were going to build a house by the use of the material they had bought at Kearney. They went out to look at the property at North Platte three or four times and they went to Kearney several times in connection with the barracks property purchased. The property they examined in North Platte was purchased by appellant and the title was taken in the name of his son by a prior marriage. A house was constructed thereon and the parties were living there at the time of the divorce. Appellant claims that the property was bought with money of his son. Appellee first knew of this claim when it was stated in the divorce case. She thinks that she first learned that the title to the property was taken in the name of the son of appellant in June of 1954.

Appellee did not present the facts about the money she gave appellant, the representations made concerning it, and the facts about the property which he bought, improved, and put in the name of his son because she believed, relied, and acted upon the statements, requests, and representations of appellant that if appellee would drop everything and not insist on anything in the divorce case he would make up to her what he owed her—meaning the money she gave him and referred to by her as $1,200; that he would help her start up in business; that he wanted her to come and live with him after she got the divorce; that the night before the decree was rendered in the last divorce case he urged her to drop everything and he would make it up after the divorce; and that at one time he told appellee that they would finish the house and when Bill, his son, came back he would do something about the title so that

they could both own it jointly because it was their money that bought the barracks and property. She testified she believed and relied upon what appellant said. She talked with appellant weeks after the divorce case was heard and she learned that he had no intention of doing anything for her. He then claimed that she did not give him any money but he asked her to live with him without being married and she refused. She believed until this time that he would respect his promises. She after that commenced this proceeding.

The pastor of the First Methodist Church of North Platte had known the parties for about 3 years and he testified that appellant had talked with him on occasions about the disagreements between him and appellee. Appellant in September 1952, probably about September 20, came to see the witness and told him he had made a financial settlement with his wife and that she had given him back some money. Appellant produced bills from his pocket and said there was $1,200 that his wife gave him to keep for her. A few days later while appellant and the witness were talking, appellee arrived. She and appellant argued. She asked him for the money. He pleaded ignorance of what she was talking about. The witness asked appellant why he did not give appellee the money appellant had shown the witness. Appellee left and appellant complained to the witness that he had betrayed the confidence of appellant.

A saleswoman for a real estate firm said she had negotiations with appellant concerning the sale of property. Appellee and appellant were in the office about three times and the saleswoman took them to examine the property. They told her about the barracks they bought and that they were going to build a house. Appellant told the saleswoman when they were alone and appellee was not present he was buying the property for his boy. There is no evidence that appellee was present when the deal was closed, and the conveyance was

made and delivered to appellant in which his son was named as grantee.

The proof offered by appellant is a denial of all the material evidence produced by appellee. The evidence of each of the parties contains improbabilities. The explanations of appellant are evasive and far from convincing. He attempted to avoid many situations by denial or the assertion that he did not remember. He claims his son sent him the money to buy the property in North Platte discussed above but appellant could not say how it was sent, how much, or on how many occasions. It was not deposited in any customary manner so that there is a record. Appellant said when he got the money he put it in a hole under a dead tree about 7 miles from North Platte. There is evidence he had an account in the First National Bank at North Platte. This illustrates the character of the testimony of appellant.

The evidence conflicts. The court heard and observed the persons as they testified. A greater part of the evidence is oral. This appeal must be tried in this court de novo upon the record. The manner of the consideration of cases of this character in this court has often been stated and will not be repeated. Shepardson v. Chicago, B. & Q. R. R. Co., 160 Neb. 127, 69 N. W. 2d 376; Bahm v. Raikes, 160 Neb. 503, 70 N. W. 2d 507.

The district court may at any time within 6 months of the trial and decision of a divorce case, if no appeal has been taken within 1 month therefrom, vacate or modify the decree therein. § 42-340, R. R. S. 1943; Pittman v. Pittman, 148 Neb. 864, 29 N. W. 2d 790; Roberts v. Roberts, 157 Neb. 163, 59 N. W. 2d 175. The right of the court to vacate or modify a decree of divorce within 6 months of the rendition is not an absolute one but must be exercised within a sound discretion. The discretion must be supported by good reason and the result produced may not be unconscionable. In Pittman v. Pittman, *supra*, it is said: "No decree of divorce

shall become final or operative until six months after trial and decision except for purposes of review. * * * In a divorce action if no appeal shall be taken within three months (now 1 month) from trial and decision the court may within six months vacate or modify the decree. * * * The right to vacate or modify a decree of divorce within six months is not absolute but must be exercised within a sound discretion. * * * In order that it may be said that the court exercised a sound judicial discretion in vacating or modifying a decree of divorce good reason therefor must be shown and it must also be shown that such action would not produce an unconscionable result." See, also, Shinn v. Shinn, 148 Neb. 832, 29 N. W. 2d 629, 174 A. L. R. 510; Roberts v. Roberts, *supra;* Arent v. Arent, 159 Neb. 347, 66 N. W. 2d 813; Kasai v. Kasai, 160 Neb. 588, 71 N. W. 2d 105; Moran v. Moran, 161 Neb. 372, 73 N. W. 2d 709.

It may not be concluded that the trial court abused its discretion in the modification made by it in the decree of divorce involved in this cause.

The judgment of the district court should be and it is affirmed. Appellee should be and is allowed as compensation of her counsel in this case the sum of $150, to be taxed as costs, and all costs of appeal should be and they are taxed to appellant.

AFFIRMED.